COMMONWEALTH *vs.* CHAY GIANG.

Middlesex. April 4, 1988. — June 16, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Dismissal, Report. *Robbery. Joint Enterprise. Evidence,* State of mind.

Although a trial judge should not ordinarily report to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), the issue of what inferences a finder of fact would be entitled to draw from the evidence in a criminal case, especially where those inferences relate to a defendant's knowledge or state of mind, an issue peculiarly in the province of the finder of fact, this court, having transferred the case from the Appeals Court, addressed the merits of a reported question where the parties had fully briefed and argued the matter, and where the report of the question had already occasioned a delay in the defendant's trial. [607-608]

Upon review of a statement of expected evidence submitted by the Commonwealth in response to a criminal defendant's pretrial motion to dismiss indictments charging him with armed assault with intent to rob, carrying a firearm, attempted armed robbery, and conspiracy to commit armed robbery, this court concluded that there was sufficient evidence of a criminal joint venture to withstand a motion for a required finding of not guilty. [608-610]

INDICTMENTS found and returned in the Superior Court Department on January 29, 1987.

A motion to dismiss was heard by *Hiller B. Zobel*, J., and the cases were reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Wendy Murphy*, Assistant District Attorney, for the Commonwealth.

*Robert L. Sheketoff* for the defendant.

ABRAMS, J. A judge of the Superior Court reported the following question to the Appeals Court: Whether the Commonwealth's statement of its expected evidence is sufficient

to withstand the defendant's pretrial motion to dismiss the indictments. We transferred the case on our own motion. We conclude that the evidence which the Commonwealth intends to offer at a full trial is sufficient to withstand a motion for a required finding of not guilty. We therefore remand this case for trial.

We summarize the Commonwealth's statement of expected evidence. Nguon Bun Tea and his wife, Mom Ly, own, operate, and are the sole employees of the New Phnom Penh jewelry store located at 206 Appleton Street in Lowell. The store is kept locked, and customers are admitted only when the door is released electronically or unlocked from the inside with a key. Tea and his wife previously owned, in partnership with several others, a jewelry store in Boston's Chinatown section.

Shortly after 3 P.M., on January 2, 1987, Theresa Parlee saw three men standing at the edge of a parking lot near the jewelry store. Approximately five minutes after Parlee noticed the men, one of them, Binh Nguyen, approached the jewelry store, looked in the window, and returned to converse with the other two men, Phuc Le and Khanh Truong.

Shortly thereafter, Truong approached the jewelry store and looked in the window. He proceeded diagonally across Appleton Street in the direction of a dark blue Pontiac automobile with a registration numbered 514-MMT. The automobile was parked approximately three feet from the curb on Pearl Street, which intersects Appleton Street approximately ninety to one hundred feet from the jewelry store. The automobile's engine was running and the defendant was behind the wheel. The vehicle was pointed toward Spring Street and away from Appleton Street. After several minutes, Truong returned to the group. In the meantime, Phuc Le frequently looked down Pearl Street in the direction of the blue Pontiac.

After a few minutes, Nguyen approached the door of the jewelry store and sought entry. His arms were crossed against the front of his body and were tucked inside his jacket. Nguon Bun Tea opened the door and Nguyen pushed his way into the store. At that point, Le and Truong rushed toward the store. Nguyen cornered Mom Ly in front of the store's front jewelry

case and hit her with a hard object that "felt like steel." The blow fractured her skull. At the same time, Truong, who was carrying what appeared to be a handgun, struggled with Tea just outside the store as Tea tried to flee the store.

Le entered the store carrying a large hammer. As Le entered the store he pulled a gym bag out of his pocket. He then swung the hammer against the jewelry case that contained the most valuable jewelry. Tea simultaneously managed to reach the middle of Appleton Street where he screamed for help. Truong signalled the other two men and all three men left the store without having taken any jewelry.[1]

Anthony Whittman, who was standing outside another store approximately one hundred yards from the jewelry store, saw the three men run across Appleton Street and down Pearl Street to the blue automobile. Another witness, Florence Tech, saw the automobile parked on Pearl Street for approximately five to eight minutes with its engine running. She observed an Asian male sitting in the driver's seat.

Truong, Le and Nguyen jumped into the automobile. The same Asian male, whom Anthony Whittman later identified as the defendant, was in the driver's seat. The vehicle drove away, accelerating rapidly. The automobile traveled down Appleton Street, past Spring Street to Middlesex Street. The automobile turned left onto Middlesex Street, turned left again onto Thorndike Street and turned right onto the Lowell Connector. The automobile had traveled the most direct route out of Lowell from the jewelry store.

At approximately 3:30 P.M., Troopers Howard and Griffin of the Massachusetts State police were notified by means of a radio dispatch to look for the blue Pontiac. The troopers observed the vehicle traveling southbound on Route 3 near the exit for Route 62. The troopers stopped the automobile within approximately fifteen minutes of the attempted robbery.

The troopers observed a handgun in the upper left corner of the floor space in front of the right rear passenger seat and beyond the open space between the front bucket seats. The

---

[1] All the incidents that occurred in and in front of the jewelry store were recorded on videotape. The tape was submitted to the judge as part of the Commonwealth's evidence.

vehicle also contained a pile of clothes and the bag that Phuc Le had taken into the jewelry store. Khanh Truong had a gun in the waistband of his pants. All four men were taken to the Lowell police station where Theresa Parlee, Nguon Bun Tea, Anthony Whittman, and Florence Tech identified Phuc Le, Khanh Truong, and Binh Nguyen as the three men involved in the attempted robbery at the jewelry store.

The defendant was indicted on charges of armed assault with intent to rob, carrying a firearm, attempted armed robbery, and conspiracy to commit armed robbery. The Commonwealth argued a joint venture theory of culpability. Prior to trial, the defendant moved to dismiss the indictments on the ground that the evidence that the Commonwealth intended to introduce at trial was insufficient as a matter of law to withstand a motion for a required finding of not guilty. The Commonwealth opposed the motion. The judge did not rule on the motion,[2] but instead reported the question of the sufficiency of the evidence to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979).

1. *The judge's decision to report the question.* We first discuss the question of the appropriateness of the report. "[I]n a case like the instant case[] where dismissal is requested because of the claimed insufficiency of the evidence of guilt, [dismissal] cannot be ordered unless the Commonwealth agrees to join in the affidavit procedure or in a stipulation of the facts." (Footnote omitted.) *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 63 (1977). See *Commonwealth* v. *Brandano*, 359 Mass. 332, 337 (1971). Although the Commonwealth agreed in this case to submit a "statement of expected evidence," that statement was not sworn, was not a stipulation of facts, and did not contain a stipulation by the Commonwealth "that the appellate record contains a statement of all the Commonwealth's contemplated evidence." *Rosenberg* v. *Common-*

---

[2] In his memorandum and order, the judge noted "that although the present rule in Massachusetts is that 'a judge cannot be required to direct a verdict on an opening by the prosecutor in a criminal case,' *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 62 (1977), . . . were the prosecutor to make an opening identical to his present best-case statement, and were Defendant to move for dismissal on the opening, I would unhesitatingly grant Defendant's motion."

*wealth, supra.* Because of the discrepancies between the procedures followed in this case and those outlined in *Rosenberg* and *Brandano,* the judge properly refused to grant the defendant's motion.

However, we think ordinarily it is improvident for a judge to report to the Appeals Court pursuant to rule 34 the issue of what inferences a finder of fact would be entitled to draw from the evidence. This is particularly true where those inferences relate to a defendant's knowledge or state of mind, an issue peculiarly in the province of the finder of fact. See *Commonwealth* v. *Longo, ante* 482, 487 (1988), and cases cited; *Commonwealth* v. *Clarke,* 350 Mass. 721, 722 (1966). Cf. *Quincy Mut. Fire Ins. Co.* v. *Abernathy,* 393 Mass. 81, 86 (1984) (summary judgment disfavored where motive or state of mind at issue). Nevertheless, because the parties have fully briefed and argued the matter in this court, and because of the delay in the defendant's trial occasioned by this interlocutory appeal, we address ourselves to the merits of the reported question. See *Heil* v. *McCann,* 360 Mass. 507, 510-511 (1971). See also *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

2. *Sufficiency of the evidence.* "The test [for joint venture] is whether each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Bianco,* 388 Mass. 358, 366 (1983). *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980). *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). It is undisputed that the defendant rendered aid to the principals in this case. He drove the getaway vehicle. The only issue is whether he acted with knowledge of the attempted robbery and an intent to assist in committing the crime.

This case is governed by the principles we applied in *Commonwealth* v. *Longo, supra* at 487: "'A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed

at the trial. . . . The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable' . . . 'The line that separates mere knowledge of unlawful conduct and participation in it, is "often vague and uncertain. It is within the province of the jury to determine from the evidence whether a particular defendant [has] crossed that line."' . . . 'To the extent that conflicting inferences are possible from the evidence, "it is for the [finder of fact] to determine where the truth lies."'" (Citations omitted.)

"Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense. We are unwilling to adopt a rule which would create artificial barriers against inferences of complicity which may naturally be drawn against one found present in a getaway car during or shortly after an armed robbery." (Footnote omitted.) *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32-33 (1976). See *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 801 (1985); *Commonwealth* v. *Knight*, 16 Mass. App. Ct. 622, 624 (1983).

The defendant in this case waited near the jewelry store in an automobile with the engine running and instantly drove off with the principals in the attempted robbery as they fled from the store. Minutes before the attempted robbery, Truong looked into the store and walked toward the automobile, permitting an inference that Truong conferred with the defendant.[3] When the State police stopped the car, Truong, with a gun in his waistband, was seated next to the defendant, and a second gun was visible on the floor in front of the right rear passenger seat. "Viewing the [statement of expected] evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979), we conclude that [a] jury reasonably could infer the requisite mental state for a joint venture from the circumstances and from the conduct

---

[3] The Commonwealth's evidence indicates that the Teas knew the defendant. Thus, it could be inferred that the defendant stayed out of sight in order to avoid being identified.

of the defendant[]." *Commonwealth* v. *Longo*, *supra* at 487. The case is remanded to the Superior Court for trial.

*So ordered.*