COMMONWEALTH vs. LISA M. LOMBARD
(and three companion cases [1]).

Worcester. January 12, 1995. - March 3, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Robbery. Joint Enterprise. Practice, Criminal*, Required finding, Trial of
defendants together, Grand jury proceedings, Disclosure of evidence.
*Supreme Judicial Court*, Further appellate review. *Assault and
Battery.*

At the trial of indictments for robbery, tried on the theory of joint venture,
the Commonwealth did not carry its burden of proving that the defend-
ants acted with knowledge that a third person intended to commit or
had committed the robbery and possessed a specific intent to assist in
the commission of the crime: the defendants' motions for required find-
ings of not guilty should have been allowed. [590-593]
In a criminal case the Commonwealth presented sufficient evidence to the
grand jury to warrant the defendant's indictment; the defendant's case
was appropriately joined with her codefendants' cases for trial; and the
defendant did not demonstrate that the Commonwealth's delayed dis-
closure of a photographic identification of her deprived her of an other-
wise available avenue of defense, inasmuch as the issue of the defend-
ant's identity and presence at the scene of the crime was not seriously
challenged. [593-595]

INDICTMENTS found and returned in the Superior Court
Department on August 5, 1992.

The cases were tried before *James P. Donohue*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Edward C. Bryant, Jr.*, for Anita M. Sargent.

*Brian J. Buckley* for Lisa M. Lombard.

---

[1] Two against Anita M. Sargent, and one against Lisa M. Lombard.

*James P. McKenna,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. In *Commonwealth v. Lombard,* 37 Mass. App. Ct. 43 (1994), the Appeals Court reversed the robbery convictions of the defendants, Lisa M. Lombard and Anita M. Sargent, on the ground that the Commonwealth's evidence was insufficient to warrant a finding, beyond a reasonable doubt, that the defendants had participated as joint venturers in a robbery committed by Henry Lombard, the brother of Sargent and the husband of Lombard.[2] The Appeals Court affirmed the defendants' convictions of assault and battery. We granted the Commonwealth's application for further appellate review. We conclude, as did the Appeals Court, that the Commonwealth's proof on the critical point of intent was insufficient as matter of law to convict the defendants of robbery. Accordingly, we reverse their robbery convictions. The convictions of assault and battery, which apparently were placed on file without the consent of the defendants, are affirmed. See *Commonwealth v. Paniaqua,* 413 Mass. 796, 797 n.1 (1992).

Immediately prior to the commencement of trial, Henry Lombard entered guilty pleas to charges of robbery, larceny from a person, assault by means of a dangerous weapon

---

[2]The Appeals Court reached its conclusion on the robbery convictions on its own initiative, despite the lack of precise arguments by the defendants on the issue of the sufficiency of the Commonwealth's evidence (although both defendants had requested required findings of not guilty), in order to prevent a miscarriage of justice. See *Commonwealth v. Lombard,* 37 Mass. App. Ct. 43, 46-47 & n.4 (1994). Each defendant raised additional issues concerning the robbery convictions. In view of our conclusion on the sufficiency of the evidence point, we reach other arguments raised by the defendant Lombard only as they relate to her assault and battery conviction. In cursory fashion, Sargent argues that cumulative errors demonstrate ineffective assistance of counsel and a substantial risk of a miscarriage of justice. To the extent that these cursory arguments merit consideration, see *Karen Constr. Co. v. Lizotte,* 396 Mass. 143, 148 n.7 (1985), we note that Sargent's trial counsel properly preserved the sufficiency of the evidence point, and raised the defense that Sargent's conduct during the assault was legally excusable as the defense of another. Trial counsel's performance did not fall below the standards discussed in *Commonwealth v. Fuller,* 394 Mass. 251, 255-256 & n.3 (1985).

(shod foot), and assault and battery. The defendants proceeded to trial. The evidence in the Commonwealth's case, viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), was summarized by the Appeals Court. We repeat that summary with certain additions which we have placed in brackets.

"Ronald Corriveau testified that [just after 9 P.M. on June 22, 1992] he was seated in his [automobile], which was parked along the curb outside a Sears store in [the Auburn] shopping mall. The engine was running, and he was waiting for his wife, Georgette Corriveau, to come out of the store. Upon seeing her, he reached over and pushed open the passenger door. Before she could slip into her seat, her purse was pulled from her shoulder by Henry Lombard. Georgette Corriveau told her husband what had happened, and he told her to wait on the sidewalk. Because Corriveau had left the engine running while he waited for his wife, he was able to give immediate pursuit to Henry Lombard, who was running among the [automobiles] parked in the lot. [The chase covered a fair amount of ground in the mall parking lot, which contained a number of parked vehicles. Lombard and the pursuing automobile were soon out of Georgette Corriveau's view.]

"Eventually, Henry Lombard apparently tired and slowed his pace. Corriveau got out of his [automobile] and ran toward him. Lombard held to the strap of the purse and swung at Corriveau. The strap broke, and the purse sailed past Corriveau. Corriveau lunged for Lombard [and held him around the legs, immobilizing him].

"Two or three people, seeing the chase [or] the struggle, started toward the two men . . . . Each testified that, as they came upon the scene of the [struggle], a van pulled up. Two women, the defendants, got out of the van and began to kick and hit Corriveau, who was holding Henry Lombard's legs. [Corriveau and one of the bystanders heard one of the women say, as she got out of the van, 'You're assaulting ("mugging") my brother ("my husband").' Corriveau heard

Henry Lombard say to the women, 'He's holding my legs. I can't move. Get him off of me.'] Henry Lombard was beating Corriveau about the head. Corriveau testified that when he was no longer able to withstand the pain from the blows he was receiving, he let go of Henry Lombard and assumed a fetal position as the kicking continued. [Corriveau's injuries from this beating were extensive and painful.]

"Upon being released, Henry Lombard jumped up . . . got into the van, and drove off with the defendants. [None of the bystanders remembered seeing the purse in the hands of Henry Lombard or either of the defendants. After the van drove away, as the bystanders were tending to Corriveau, one of them thought she heard Corriveau say, "A woman tried to take my wife's purse."] One of the witnesses to the [beating] followed the van for a short time and then alerted the police, giving them a description of the vehicle. [This witness testified that while she was following the van, she saw two persons in the front seat, with their heads close together, apparently looking through something. She also saw them throw some papers out of the passenger window of the van.] The defendants and Henry Lombard were arrested shortly thereafter. Georgette Corriveau's purse was in the van."[3] 37 Mass. App. Ct. at 44-45.

1. *The robbery convictions.* The legal principles applicable to a case of this type are well settled. "The test [for participation in a joint venture] is whether each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Bianco,* 388

[3]The Appeals Court opinion also summarized the evidence in the defendants' case which consisted of testimony by Henry Lombard and Sargent. See 37 Mass. App. Ct. at 45. We have omitted that summary, focusing only on the Commonwealth's evidence, to see if that evidence was sufficient to defeat the defendants' motions for required findings of not guilty. This being the case, we do not have to address the Commonwealth's argument that the Appeals Court improperly relied upon portions of Henry Lombard's testimony in assessing the legal sufficiency of its proof.

Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). See *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). The defendants were companions of Lombard, and they were present somewhere in the general vicinity when his crimes were committed. See *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 241-244 (1982). They also were in a position to, and did, render some aid to Lombard, at least in the aftermath of the robbery of Georgette Corriveau. See *Commonwealth* v. *Giang*, 402 Mass. 604, 608 (1988) (driver in getaway vehicle rendered aid to principal in case of attempted armed robbery); *Commonwealth* v. *Longo, supra.*

"The only issue is whether [the defendants] acted with knowledge of the . . . robbery and an intent to assist in committing the crime." *Commonwealth* v. *Giang, supra.* "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at trial." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). "The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Id.* However, "the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " *Commonwealth* v. *Latimore, supra* at 677, quoting *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928). See *Commonwealth* v. *Bianco, supra* at 366-367. When "conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies.' " *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981), quoting *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978). However, when conflicting inferences bearing on the question of intent, an essential element of proof of joint venture, are of equal force or probability, the choice between them may amount to impermissible conjecture, an insufficient basis for a finding of guilt beyond a reasonable doubt. See *Commonwealth* v. *Bianco, supra* at 363.

Although the case is a close one, we agree with the Appeals Court that the judge should have granted the defendants' motions for required findings of not guilty on the robbery charges. There was no evidence that either defendant was present when Henry Lombard selected his victim, or that, while in the van, he was in possession of a weapon (other than his shod foot), a disguise, or anything else which might have given rise to an inference of knowledge of his plans on the part of the defendants. Contrast *Commonwealth v. Amaral, supra* at 243. The defendants waited for Henry Lombard in a mall parking lot during business hours, a common and normally blameless course of conduct. Contrast *Commonwealth v. Mahoney,* 405 Mass. 326, 328 (1989) (defendant parked in deserted business parking lot at 5 A.M. in vicinity of crime). The evidence does not warrant a finding that either defendant had acted as a lookout for Henry Lombard, or, in view of the apparent size of the parking lot and lack of visibility across it, a finding that the defendants were well positioned to facilitate his rapid escape. Contrast *Commonwealth v. Giang, supra* at 609; *Commonwealth v. Pringle,* 22 Mass. App. Ct. 746, 750 (1986). Obviously, since there was no conference between the defendants and Henry Lombard while he was in the mall, there was no basis for an inference that he was keeping the defendants apprised of his plans. Contrast *Commonwealth v. Giang, supra.* Thus, this case is distinguishable from others in which the evidence has justified an inference that a defendant knew in advance of plans for a robbery, and participated by standing by in a vehicle, prepared to abet the principal's flight.

The Commonwealth asserts that the lack of evidence that "the defendants knew that Henry Lombard entered the mall intending to commit a robbery," 37 Mass. App. Ct. at 47, is irrelevant, because, at the crucial moment, "the parties consciously acted together in carrying out the criminal endeavor, each thereby becoming responsible for the acts of the others." *Commonwealth v. Fidler,* 23 Mass. App. Ct. 506, 513 (1987). *Commonwealth v. Mercado,* 24 Mass. App. Ct. 391, 396 (1987). We agree that the Commonwealth need not

show an "anticipatory compact" as a basis for joint venture liability, *Commonwealth* v. *Fidler, supra,* but that is not precisely the point on which this case turns.

The cases on which the Commonwealth relies, the *Mercado* and *Fidler* cases, and *Commonwealth* v. *Young,* 35 Mass. App. Ct. 427 (1993), concern joint venture liability for assault and battery or for murder. In each of these cases, the evidence left little doubt that the defendant joined in an attack on the victim already in progress, while sharing in the principal's intent to injure or to kill the victim. These decisions stand for the proposition that joining in an assault and battery already in progress or impeding a victim's escape, is a basis for joint venture liability for the assault, irrespective of whether there is evidence permitting the inference of a prior agreement to injure or kill the victim.

In contrast, when a defendant transports the principal from the scene of a robbery, the Commonwealth's evidence must show that the defendant acted with knowledge of the robbery and possessed a specific intent to assist in the commission of that crime. *Commonwealth* v. *Giang, supra* at 608 ("It is undisputed that the defendant rendered aid to the principals in this case. He drove the getaway vehicle. The only issue is whether he acted with knowledge of the attempted robbery and an intent to assist in committing the crime"). Here, there was a lack of evidence to support the inference that the defendants went to Henry Lombard's rescue knowing that he had committed a robbery and with the specific intent of aiding him to complete it. Although the witnesses' accounts of the struggle varied widely,[4] all agreed that the van pulled up after Ronald Corriveau had closed with Henry Lombard. This being so, the defendants could not have seen Henry Lombard swing at Corriveau with the stolen purse. There was evidence that Henry Lombard requested assistance from the defendants, but no evidence that he offered any hint of the events that had given rise to the chase. Of the several witnesses to the beating, none saw ei-

---

[4]The witnesses were sequestered.

ther woman holding, or in the vicinity of, Georgette Cor-
riveau's purse.[5]

The Commonwealth's witnesses testified to a statement by
one of the defendants most compatible with the inference
that she believed Henry Lombard to be the victim of an as-
sault and battery. Evidence tending to suggest that one of the
defendants may have gone through the purse with Henry
Lombard after the van left the mall parking lot cannot serve
as a substitute for some proof that the defendants shared
Henry Lombard's intent to complete a robbery when they
freed him from Ronald Corriveau and drove away from the
mall.[6]

---

[5]One of the Commonwealth's witnesses, displaying considerable uncer-
tainty, testified that she thought she had heard Ronald Corriveau say, "A
woman tried to take my wife's purse." Viewed in context, we do not think
this testimony adequate to support the inference that Ronald Corriveau
saw one of the defendants in possession of the purse. This would have been
irreconcilable with his own testimony. He was positive (nor is it disputed)
that a man, Henry Lombard, took the purse. Ronald Corriveau never saw
his other assailants. He testified that he did not see the purse again after it
was swung at him, and he did not see Henry Lombard or anyone else pick
it up. The witness who thought she heard this statement testified that she
had focused her attention on Ronald Corriveau and that all she saw was
one woman in the act of assaulting him. Thus, she might have inferred a
reference to a woman.

[6]Aware, perhaps, of the deficiencies in the evidence, the prosecutor, in
his closing argument, invited the jury to draw impermissible inferences, as
next set out, to close the gap. The prosecutor commenced by stating:

> "One thing that you consider is are the joint venturers, did they
> know the background of the main culprit? What did they know
> about him at the time the incident happened? . . . [T]hey come in
> here as the defendant [Sargent] said, 'I didn't know anything that
> happened,' there was a crime, you're entitled, I would suggest to
> you, to consider, wait a minute, she knew about her brother, she
> knew about the burglar[ies] he had committed. She knew that if a
> man is chasing [him] in the Auburn Mall . . . [t]hat man, whoever
> he was [,] chasing Henry, had very good ample reason to get
> Henry."

This theme was picked up again at the close of the argument:

> "When they see that man . . . chase [Henry Lombard], they know
> from what they know of Henry and what kind of a guy Henry is,
> that that man . . . has good reason to chase him and catch him, he's

It is possible that the defendants knew that Henry Lombard intended to commit a robbery in the mall, that they were prepared to assist in his escape and, perhaps, to share in the fruits of his crime. The case, however, cannot be left to possibilities or suspicion. It was the Commonwealth's burden to present evidence which warranted a jury's finding beyond a reasonable doubt robbery by means of joint venture, and this the Commonwealth failed to do.

2. *Assault and battery conviction of Lombard.* Although this question has not been raised by the parties, we comment first on the proper scope of our review in this case. In a case in which further appellate review has been granted, "[o]ur general rule [has been] that we . . . review all issues that were before the Appeals Court (and [do] not limit our review just to those issues urged as grounds for further appellate review), unless our order allowing further review indicates otherwise." *Bradford* v. *Baystate Medical Ctr.*, 415 Mass. 202, 204 (1993). Despite a statement to the contrary in a recent case, see *Commonwealth* v. *Caldwell*, 418 Mass. 777, 778 n.2 (1994), we reaffirm this general rule. Unless otherwise specified by order of this court, when an application for further appellate review is allowed, all issues presented to the Appeals Court and argued adequately in the briefs filed with this court, see *Karen Constr. Co.* v. *Lizotte*, 396 Mass. 143, 148 n.7 (1985), are before this court.[7] We now turn to the

done something wrong, whatever it is."

The jurors were exhorted to substitute for specific intent to aid in the crime of robbery, the defendants' supposed knowledge of what Henry Lombard was likely to have done. This was, in effect, an impermissible invitation to convict based on guilt by association, see *Commonwealth* v. *Casale*, 381 Mass. 167, 175 (1980), which, despite objections, was not cured by immediate and forceful instructions from the judge. It is possible, despite competent instructions on joint venture liability from the judge, that the prosecutor's closing argument tipped the scales against the defendants.

[7]Distinguishable from the situation of Lombard and Sargent with respect to their right to review in this court is "the right of a party [in a multiple party, multiple issue case] who was entirely unsuccessful in the Appeals Court and who did not seek further appellate review" of the Appeals Court decision. *Bradford* v. *Baystate Medical Ctr.*, 415 Mass. 202,

additional issues raised by Lombard related to her conviction of assault and battery, none of which requires extended discussion.

As to Lombard, the Commonwealth presented adequate and essentially accurate evidence to the grand jury sufficient to warrant her indictment on charges of robbery and assault and battery. A brief reference to "curly" rather than "straggly" shoulder-length, blond hair does not rise to the level of a misstatement of the evidence against the defendant. Cf. *Commonwealth* v. *Martino*, 412 Mass. 267, 278-279 (1992), and cases cited. The presentation to the grand jury was neither unfair nor misleading. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 446-447 (1984). Nor, as the Appeals Court observed, is there anything "in the record which remotely suggests that the defendant Lombard's motion for severance should have been granted." 37 Mass. App. Ct. at 48-49. Joinder plainly was appropriate in this case, see Mass. R. Crim. P. 9 (b), 378 Mass. 859 (1979), and no showing of prejudice has been made. See *Commonwealth* v. *Moran*, 387 Mass. 644, 658-659 (1982). See also *Commonwealth* v. *Dias*, 405 Mass. 131, 137 (1989).

In the course of the trial, there was a delayed and unexpected disclosure by one of the witnesses that he had identified a photograph of Lombard, shown to him by the police, as one of the women who had participated in the beating administered to Corriveau. The police officer had not disclosed the identification because he thought the witness's choice of photograph might have been influenced by a gesture that the officer had made.[8] We assume that a motion to suppress the photographic identification would have been successful. Nonetheless, it has not been shown that "given a timely dis-

---

205 (1993). The latter is not entitled to appear and request reconsideration of his case "as a part of our consideration of the case on further appellate review obtained by another unsuccessful party." *Id.*

[8]While this does not constitute an excuse, we note that it does not appear from the transcript that the prosecutor knowingly failed to disclose the identification to the defense. See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 177 & n.12 (1982).

closure, the defense would have been able to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Commonwealth v. Baldwin*, 385 Mass. 165, 175 (1982), quoting *Commonwealth v. Wilson*, 381 Mass. 90, 114 (1980). See *Commonwealth v. Paradise*, 405 Mass. 141, 150 (1989). The Commonwealth presented evidence that two women participated in beating Corriveau. Testimony to this effect at trial corroborated statements given to the police the night of the incident. Lombard's identity as one of those women was not seriously challenged, and could not readily have been challenged, in view of her presence in the van when it was stopped by police officers shortly after the incident. Eyewitness testimony and circumstantial evidence (as well as the testimony of Henry Lombard and Sargent) placed Lombard at the scene. The photographic identification did not appreciably strengthen the Commonwealth's case against her. Lombard has failed to demonstrate that the Commonwealth's error deprived her of an ·avenue of defense that might otherwise have been available to her.[9]

The judgments of conviction of robbery are reversed, the verdicts set aside, and judgments are to enter for the defendants on these charges. The assault and battery convictions are affirmed.

*So ordered.*

---

[9]On his own initiative, the judge gave an instruction on consciousness of guilt. Counsel made no specific objection to the instruction. In a case where the defendants, with Henry Lombard, fled together from the scene of an assault in which they had participated, it was within the judge's discretion to give the instruction. See *Commonwealth v. Simmons, ante* 426, 434-436 (1995); *Commonwealth v. Lydon*, 413 Mass. 309, 313 (1992).