## COMMONWEALTH *vs.* WILLIAM MATTOS.

No. 98-P-584.

Bristol. June 16, 1999. - May 24, 2000.

Present: BROWN, SMITH, & SPINA, JJ.[1]

*Practice, Criminal,* Assistance of counsel, Failure to object. *Constitutional Law,* Double jeopardy. *Joint Enterprise. Intent. Evidence,* Hearsay, Cumulative evidence.

Where sufficient evidence to warrant a guilty verdict was introduced at the first trial of an indictment (later mistried when the jury could not agree), trial counsel at the first trial did not render ineffective assistance by failing to file a motion to dismiss the indictment after the Commonwealth sought to retry the case and before the retrial had begun. [219-220, 222-224]

A criminal defendant did not demonstrate that his trial counsel was ineffective for failing to object to certain hearsay testimony that was merely cumulative of other properly admitted evidence. [224-226]

At the retrial after mistrial of a criminal case, the judge correctly denied the defendant's motion for a required finding of not guilty. [226]

INDICTMENT found and returned in the Superior Court Department on July 1, 1996.

The case was tried before *Thomas E. Connolly,* J., and, after declaration of a mistrial, the case was retried before *Gerald F. O'Neill, Jr.,* J.

*Kathleen M. McCarthy* for the defendant.

*Sharon L. Sullivan-Puccini,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On July 1, 1996, the defendant was indicted for unarmed robbery. On October 29, 1996, a jury trial commenced in the Superior Court. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty

[1]This case was heard by Justices Brown, Smith, and Spina. Justice Spina was appointed an Associate Justice of the Supreme Judicial Court before the opinion was written. Justice Gelinas joined the panel and participated in this decision.

which was denied by the judge. After the case went to the jury, the judge received two communications indicating that the jurors were deadlocked. As a result, the judge declared a mistrial and discharged the jury.

On March 19, 1997, a second jury trial commenced. Again, the defendant moved for a required finding of not guilty at the close of the Commonwealth's case which was denied by the trial judge. The defendant renewed his motion at the close of all of the evidence, and it was denied. On March 20, 1997, the jury returned a guilty verdict.

On appeal, the defendant claims that (1) he received ineffective assistance of counsel in his first trial because his attorney (a) failed to file a motion to dismiss on double jeopardy principles after the first trial and (b) failed to object to an out-of-court identification; (2) that the judge at the first trial committed error in denying the defendant's motion for a required finding of not guilty; and (3) that the judge at the second trial committed reversible error in denying the defendant's motion for a required finding of not guilty.

1. *The ineffective assistance of counsel claims.* a. *The double jeopardy claim.* The defendant contends that the Commonwealth's evidence at the first trial was insufficient to warrant a guilty verdict, and therefore, his retrial was prohibited on double jeopardy principles. See *Commonwealth* v. *Ginnetti*, 400 Mass. 181, 182-183 (1987). In order to obtain review of such a claim, a defendant is required to file in the trial court a motion to dismiss the complaint or indictment after the Commonwealth seeks a retrial, but before the retrial takes place. *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 3 (1987). If the judge denies the motion, review may then be obtained by a single justice of the Supreme Judicial Court. See *Neverson* v. *Commonwealth*, 406 Mass. 174, 175-176 & n.2 (1989), for the procedure to be followed.

Here, the defendant claims that he was denied the effective assistance of counsel as guaranteed by the Federal and Massachusetts Constitutions because his trial counsel failed to file a motion to dismiss the indictment after the first trial. The defendant argues that, as a result, he was prejudiced because the Commonwealth had failed to introduce sufficient evidence to warrant a guilty verdict at that trial. In response, the Commonwealth claims that the double jeopardy issue was waived because it was not raised before the second trial. See *Com-*

monwealth v. *Spear*, 43 Mass. App. Ct. 583, 587 (1997). Further, the Commonwealth contends that trial counsel was not ineffective because a motion to dismiss would not have succeeded as the evidence at the first trial was sufficient to warrant a guilty verdict.

We need not discuss the waiver question because we agree with the Commonwealth that sufficient evidence was introduced at the defendant's first trial; therefore, trial counsel was not ineffective for failing to file a motion to dismiss the indictment.

We summarize the evidence at the first trial in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). At about 7 P.M. on July 23, 1996, the victim, William Neilan, went to a Shaw's Supermarket (Shaw's) in Fall River. He had approximately seven dollars in his wallet. After parking his car and as he walked toward the store, he noticed a two-toned light and dark brown car with something like a Venetian blind on the back window pass him on his left. The car stopped ahead of him near two islands in the parking lot, and a passenger, later identified as one Michael Barlow, got out of the car. The vehicle then turned into the next aisle and began proceeding in the opposite direction.

The victim had to walk around Barlow as he continued toward the store. Within seconds, however, the victim felt a hand on his left hip and another hand in the right back pocket of his shorts where his wallet was located. The victim turned to his left and saw Barlow running toward the next lane in the parking lot, in the direction in which the two-toned car had gone. The victim then heard tires squealing. At trial, he identified photographs of the defendant's car as the vehicle he saw.

From inside the supermarket an employee, Daniel Medeiros, also saw the two-toned car at Shaw's. The car was parked at an angle in the middle of the lot facing the street for approximately five to ten minutes. Soon thereafter, Medeiros walked outside and saw the same car start to move slowly from its stopped position as someone ran toward the passenger side of the vehicle. The car continued to roll as Barlow opened the door and got in. The vehicle then sped out of the parking lot toward Tiverton, Rhode Island.

A Fall River police officer, Bruce Tavares, arrived three to four minutes later and was informed of the incident. After

obtaining a description of the vehicle, Tavares left to find it.[2] He drove in the general direction of Rhode Island. Approximately ten minutes later, Tavares located the car and activated his blue lights in an attempt to stop it. The vehicle initially drove into a gas station parking lot. Tavares could see the passenger moving around and bending over while the driver, the defendant, watched the officer in the side view mirror. The vehicle then proceeded onto the street, passing three additional businesses before the driver finally parked in a Burger King lot. The officer had not told the defendant to move his vehicle away from the gas station parking lot.

Officer Tavares called for assistance, and the two men in the car were taken into custody. The officers subsequently found the victim's identification card face up on the console between the car's two front seats. A search of the vehicle revealed other forms of identification, from the victim's wallet, under the passenger side floor mat. Tavares testified, without objection, that the victim was brought to the Burger King parking lot by another police officer where he identified the car, his property, and Barlow, as the person who had taken his wallet.[3] He did not identify the defendant as the driver of the automobile while it was in Shaw's parking lot.

After the defendant and Barlow were arrested, a search revealed that the defendant did not have any money in his possession, but Barlow had seven dollars, the approximate amount of money the victim thought had been in his wallet.

In his defense, the defendant denied that he had participated in the robbery. He testified that on the day in question he was drinking beer at a bar with Barlow; he had known Barlow for about six months. They decided to leave the bar and get some food. Barlow suggested that the defendant drive him to Shaw's to buy some hamburgers and rolls so they could go back to the defendant's home and cook them.

Once they arrived at Shaw's, the defendant and Barlow argued over who should go into the supermarket to make the

---

[2]Another officer, David Gouveia, arrived at the scene and took more detailed statements concerning the incident.

[3]The victim had testified that he did not recall being brought to the scene of the defendant's arrest and, while there, identifying the car and Barlow.

The fact that Tavares so testified, without objection, forms the basis of the defendant's second claim of ineffective assistance of counsel which we address later in this opinion.

purchase; the defendant was concerned that Barlow was intoxicated. Eventually, the defendant dropped Barlow off next to the entrance.

Because a warning light was on (signifying that his car was low on oil), the defendant decided to drive to a nearby gas station to purchase a quart of oil.[4] However, as he neared the exit of the parking lot he saw Barlow waving his arms while running toward the car. Barlow opened the door, jumped into the vehicle and said, "Somebody's after me. I owe him money. Get out of here." The defendant quickly drove away.

After leaving, Barlow took out a wallet and told the defendant that he had just robbed someone. The defendant became upset and swore at Barlow. When he later noticed the police cruiser behind him, the defendant drove into a gas station and stopped. The defendant testified, however, that the officer ordered him to drive to the Burger King parking lot where he was arrested.

We first examine the evidence at the close of the Commonwealth's case. It was the Commonwealth's theory at both trials that the defendant had engaged in a joint venture with Barlow to rob the victim. The defendant argues that at the close of the Commonwealth's case-in-chief, the evidence was insufficient to establish his guilt on that theory beyond a reasonable doubt.

"The test [for participation in a joint venture] is whether each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Lombard*, 419 Mass. 585, 588 (1995), quoting from *Commonwealth* v. *Biano*, 388 Mass. 358, 366, S.C., 390 Mass. 254 (1983). "In reviewing the judge's decision to deny the defendant's motion[] for a required finding of not guilty, we inquire whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a reasonable jury of each element of [the defendant's participation in a joint venture] beyond a reasonable doubt." *Commonwealth* v. *Martino*, 412 Mass. 267, 271-272 (1992).

Here, at the close of the Commonwealth's case, no one had

---

[4]The defendant stated that he was going to pay for the oil with some change he had in his car. The police testified, however, that no money was found in the vehicle or on the defendant's person.

identified the defendant as the driver of the car in the Shaw's parking lot at the time of the crime. "However, circumstantial evidence is competent to establish guilt beyond a reasonable doubt. An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996), quoting from *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977).

The defendant claims that the evidence was insufficient to demonstrate that he was the operator of the vehicle at the time the crime occurred. We reject this claim because the jury could reasonably infer that the vehicle the defendant was operating at the time of his arrest was, in fact, his. That vehicle was identified by the victim, from photographs, as the vehicle he saw in the parking lot. Moreover, almost immediately after the incident, Tavares arrived and was given a description of the vehicle and the direction in which it was headed. Within ten minutes he had stopped that vehicle, which the defendant was driving.

In view of the short time span between the moment that the crime was committed and the stop of the vehicle (approximately thirteen minutes), a jury could draw a reasonable inference that the defendant was the driver of the vehicle while it was in the Shaw's parking lot and, further, that it was the vehicle which Barlow jumped into after he grabbed the victim's wallet. Contrast *Commonwealth* v. *Ahart*, 37 Mass. App. Ct. 565, 571-572 (1994) (evidence insufficient to show the defendant was the driver of the vehicle, and thus engaged in a joint venture, at the time that the crime occurred when forty-five minutes elapsed between the time that the crime was committed and the vehicle containing the purse snatcher was stopped).

Nevertheless, the defendant argues that even if he was the operator of the vehicle seen in Shaw's parking lot, the evidence was insufficient to show that he knew that Barlow intended to rob the victim and that he, the defendant, possessed a specific intent to assist in the commission of the crime. *Commonwealth* v. *Lombard*, 419 Mass. at 591.

"A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). "The inferences drawn by the jury need only be reasonable and possible and need not be necessary

or inescapable. . . . The line that separates mere knowledge of unlawful conduct and participation in it, is 'often vague and uncertain. It is within the province of the jury to determine from the evidence whether a particular defendant [has] crossed that line.' " *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988), quoting from *Commonwealth* v. *Cerveney*, 387 Mass. 280, 287 (1982).

Here, the defendant did not have any money on him when he was arrested; Barlow had seven dollars which the jury could reasonably infer was money he had taken from the victim; at the time the two men arrived at Shaw's, they did not have any money with them to make purchases in the supermarket.

Also, there was evidence that the defendant's car was in the parking lot for five to ten minutes prior to the robbery and positioned so that it could make a quick exit from the parking lot. Contrast *Commonwealth* v. *Lombard*, 419 Mass. at 590 (evidence did not warrant a finding that the defendants had positioned their vehicle in such a way to facilitate the purse snatcher's escape).

Further, as Barlow ran toward the vehicle, the defendant's car was observed to begin to roll forward slowly and then speed up once Barlow was inside. Thus, the jury could draw a reasonable inference that the defendant knew of Barlow's plans to commit the robbery and then participated by standing by in his vehicle, prepared to assist Barlow in his escape.

Finally, the Commonwealth's case did not deteriorate after it rested. See *Commonwealth* v. *Gilbert*, 423 Mass. at 870 n.3. "Deterioration" does not occur because there is "a conflict in the evidence which arises in the course of the defendant's case." *Commonwealth* v. *Hastings*, 22 Mass. App. Ct. 930, 931 (1986). Instead, the defendant's testimony strengthened the Commonwealth's case because he admitted that he was the driver of the car in the parking lot.

Therefore, we conclude that there was sufficient evidence introduced at the first trial to support each element the Commonwealth was required to prove, beyond a reasonable doubt, to secure a conviction of unarmed robbery on a theory of joint venture. See *Commonwealth* v. *Latimore*, 378 Mass. at 677.

b. *Failure of trial counsel to object to out-of-court identification.* The defendant claims that, at the first trial, his lawyer was constitutionally ineffective because he did not object to Tavar-

es's testimony that the victim was brought to the scene of the defendant's arrest where he identified (1) the defendant's car as being the vehicle in the parking lot, (2) his property, and (3) Barlow as the person who took his wallet.

According to the defendant, that portion of Tavares's testimony was hearsay and should have been the subject of an objection. The defendant claims that he was prejudiced because that identification strengthened the Commonwealth's case against the defendant. Accordingly, the defendant argues that without this evidence the judge would have been warranted in allowing the defendant's motion for a required finding of not guilty at the first trial.

"Frequently, a trial counsel's failure to object to the introduction of evidence . . . is not a material deviation from the standards expected of the ordinary, fallible lawyer. In many of these cases . . . the ineffective assistance claim failed because the evidence introduced was cumulative or not prejudicial." *Commonwealth* v. *Egardo*, 426 Mass. 48, 52-53 (1997).

In the present matter, even if Tavares's hearsay testimony had been struck at trial, the motion for a required finding would still have been denied because a large portion of his testimony was cumulative of other evidence.

In regard to the identification of the vehicle, the victim had testified, prior to Tavares's now challenged testimony, that the defendant's car was the vehicle observed in the parking lot. As to the identification of the victim's property, there also was evidence independent of Tavares's hearsay testimony that the identification cards found in the defendant's car at the time of the arrests were in the victim's name.

Finally, the defendant argues that Tavares's hearsay testimony was particularly prejudicial because he stated that the victim had identified Barlow as the person who robbed him. The defendant is correct in arguing that there was no direct evidence in the Commonwealth's case that the victim had identified Barlow, the passenger in the defendant's car, as the person who had taken his wallet. However, there was ample circumstantial evidence that Barlow, indeed, was the person who had robbed the victim.

For example, at trial the victim testified that as he proceeded toward the store, he saw the defendant's car pass him and stop a short distance ahead, whereupon Barlow emerged from the vehicle; as the victim walked past Barlow, within seconds he

felt his wallet being taken and turned to see Barlow running toward the next aisle in the parking lot. Medeiros then testified that, apparently moments after the victim's wallet was taken, a person ran after and then jumped into the front passenger seat of the defendant's car. That individual was found a short time later sitting in the passenger's seat of the defendant's car with the victim's identification card in plain view and other of the victim's property under his seat. Finally, the passenger had seven dollars in his possession, which is the approximate amount of money taken from the victim. Accordingly, the jury could draw a reasonable inference, without using Tavares's testimony, that Barlow was the perpetrator of the crime.

Therefore, in light of all of the evidence, we reject the defendant's claim that his counsel was ineffective for not objecting to Tavares's hearsay testimony as the officer's testimony was merely cumulative.

2. *Evidence at the second trial.* The defendant claims that the judge at the second trial committed error in denying the defendant's motion for a required finding of not guilty. We reject the defendant's claim.

At the second trial, the victim testified that the police had indeed brought him to the scene of the defendant's arrest and that he had identified Barlow as the person who took his wallet. Moreover, other evidence introduced by the Commonwealth at the second trial was consistent with the evidence at the first trial.

Therefore, the judge at the second trial correctly denied the defendant's motion for a required finding of not guilty.

*Judgment affirmed.*