## Commonwealth *vs.* Roberto Batista.

No. 00-P-1397.

Essex. November 19, 2001. - January 24, 2002.

Present: Porada, Grasso, & Doerfer, JJ.

*Robbery. Joint Enterprise. Evidence,* Joint enterprise. *Practice, Criminal,* Assistance of counsel. *Constitutional Law,* Assistance of counsel, Search and seizure. *Search and Seizure,* Automobile, Threshold police inquiry, Probable cause. *Probable Cause.*

At the jury-waived trial of an indictment charging armed robbery, the evidence was sufficient for the fact-finder to reasonably conclude that the defendant, the driver of the getaway vehicle, knew of and shared the intent of his companion to commit an armed robbery so as to make the defendant a joint venturer; further, as the evidence of joint venture was legally sufficient, there was no merit to the defendant's contention that defense counsel's failure to move for a required finding of not guilty at the close of the Commonwealth's case amounted to ineffective assistance of counsel. [645-648]

There was no merit to a criminal defendant's contention that the judge at a jury-waived trial for armed robbery applied an incorrect legal standard in imposing joint venture liability. [648]

At a hearing on a motion to suppress evidence, the judge did not err in refusing to suppress evidence seized by police during the stop of an automobile, where the police, at the time they activated their lights and siren, possessed the requisite reasonable suspicion linking the vehicle to a recent armed robbery to effect a stop; where the subsequent movement of the vehicle and the conduct of its occupants escalated the reasonable suspicion to probable cause by the time the vehicle stopped suddenly; and where, upon making a plain-view observation of jewelry trays and a gun in the vehicle, the police possessed probable cause to arrest the defendant for the robbery and to search the vehicle, as well as its compartments, for weapons and evidence. [649]

Indictment found and returned in the Superior Court Department on March 10, 1999.

A pretrial motion to suppress evidence was heard by *Howard Whitehead,* J., and the case was heard by *Thayer Fremont-Smith,* J.

*Leslie W. O'Brien* for the defendant.

*James A. Janda,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. On January 25, 1999, a man wearing a knit hat entered the Haverhill Jewelry and Pawn store on River Street in Haverhill and immediately pulled a gun from inside his coat. Speaking in Spanish, he told the store's owners, Felicita Roman and Jorge Delgado, "This is a holdup." He ordered Roman and Delgado to fill a bag with jewelry. As he was leaving the shop, the man spied some trays of necklaces. The trays could not fit in the bag, so the man left the store carrying both the bag and the trays in his hands. He ran across the street to a waiting white Hyundai Elantra automobile and entered the passenger side. The car drove off quickly, heading in the direction of interstate Route 495. The entire robbery took from three to five minutes.

Unbeknownst to the gunman, during the robbery Roman had pressed a silent alarm. Alerted to the robbery, police in nearby cruisers arrived within fifteen to twenty seconds of receiving a dispatch and began a pursuit that led to the arrest of the getaway driver (the defendant Roberto Batista), as well as the gunman, Juan Viera.

Convicted of armed robbery after a jury-waived trial, the defendant questions the sufficiency of the evidence to establish his liability as a joint venturer and claims that his trial counsel was ineffective in failing to move for a required finding of not guilty at the close of the Commonwealth's case. He also contends that the trial judge applied an erroneous legal standard in finding him guilty as a joint venturer. Finally, he maintains that the motion judge erred in denying his motion to suppress the evidence seized in the warrantless search of the motor vehicle. We affirm.

1. *Facts.* We view the facts as of the close of the Commonwealth's case in the light most favorable to the Commonwealth to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Andrews,* 427 Mass. 434, 440 (1998), quoting from *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979) (emphasis in original). "We may

consider circumstantial evidence of guilt together with inferences drawn therefrom that appear reasonable and not overly remote." *Commonwealth* v. *Andrews, supra.* In addition to those facts previously recited, we add these. At the time of the robbery, the vehicle was parked across the street and two stores down from the jewelry store, pointing in the direction of interstate Route 495. The police arrived at the robbery scene just as the Elantra was pulling away, but were not alerted to its involvement until apprised by Roman and another that the jewelry store had just been robbed at gunpoint and that two men had left in a small white car heading west on River Street toward Route 495.

Commencing immediate pursuit, the officers traveled approximately one-half to three-quarters of a mile when they saw the white Elantra in the middle of a group of six cars. The police activated their blue lights and sirens, and all the vehicles pulled over except the Elantra, which swerved around the vehicles in front of it and kept going at speeds of fifty-five to sixty-five miles per hour with the police in pursuit. After a short distance the vehicle made a sharp left, crossed the double yellow line, and took a wide right-hand turn onto James Street — a dead-end street forty or fifty yards long.

The Elantra and the pursuing cruisers stopped short at the end of James Street. As the police approached the vehicle with drawn weapons, Viera fled from the passenger's seat. The defendant, who had remained seated in the driver's seat, was removed and arrested.

In removing the defendant from the driver's side, the police observed a bag and many trays of gold jewelry on the floor of the front passenger side. On the floor of the driver's side was a knit cap, and on the floor behind the driver's seat was a loaded handgun. In the trunk, the police found the registered license plate for the vehicle.[1] At the time of the robbery, the vehicle was displaying a recently stolen license plate.

The Commonwealth's case consisted of testimony from Roman, Delgado, and the three pursuing police officers. The Commonwealth did not offer the defendant's statement in its case-in-

---

[1] The vehicle was registered to Viera's wife.

chief.[2] The defendant's case consisted of his own testimony, in addition to testimony from his live-in girlfriend and Viera, who had pleaded guilty to armed robbery prior to the defendant's trial. Viera's testimony exonerated the defendant. The defendant's theory, corroborated by Viera, was that Viera had acted alone, without the defendant's knowledge or assistance.

In his testimony, the defendant stated that he did not see Viera come out of the jewelry store with a gun and jewelry. He explained the discrepancy between his trial testimony and his earlier statement to the contrary as owing to his limited understanding of English. (See note 2, *supra.*) He testified that he did not learn of the robbery until the night of his arrest and that his flight from pursuing police was due to his belief that the police were in pursuit because Viera had purchased drugs.

2. *Sufficiency of the evidence.* The defendant argues that there was insufficient evidence from which the fact finder could reasonably conclude that he knew of, and shared, Viera's intent to commit an armed robbery of the jewelry store so as to make him a joint venturer. A defendant can be convicted as a joint venturer if he was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988). Joint venture liability is also established when the defendant aids in the commission of a felony or is an accessory before the fact. See *Commonwealth* v. *Ortiz,* 424 Mass. 853, 856 (1997); *Commonwealth* v. *Sim,* 39 Mass. App. Ct. 212, 216 (1995); *Commonwealth* v. *Caramanica,* 49 Mass. App. Ct. 376, 380-381 (2000). "The point of difference between the two theories is the factor of the defendant's presence at the scene of the felony." *Commonwealth* v. *Ortiz, supra.*

Here, we need not quibble whether the defendant's proximity to the jewelry store in the white Elantra satisfies presence at the scene. See *Commonwealth* v. *Mahoney,* 405 Mass. 326, 329

---

[2]On the night of the robbery, the defendant gave a statement that he thought that Viera had gone into a building next to the jewelry store to purchase drugs, and that Viera came out within two to three minutes with a gun in his hand and a bunch of jewelry and told him to get out of there.

(1989) ("in the vicinity of the crime"); *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. at 381-382. Under either theory of joint venture, the critical question is whether the defendant acted with knowledge of the robbery and with the intent to assist in the commission of that crime so as to accomplish its objective. See *Commonwealth* v. *Giang*, 402 Mass. 604, 608 (1988); *Commonwealth* v. *Lombard*, 419 Mass. 585, 589, 591 (1995). Based solely upon the evidence presented in the Commonwealth's case-in-chief, not aided by the defendant's later-admitted statement, the Commonwealth presented sufficient evidence that the defendant acted with knowledge and intention to assist Viera in the armed robbery of the jewelry store. See *Commonwealth* v. *Giang*, 402 Mass. at 609; *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. at 381-382.

An agreement between joint venturers need not be express. See *Commonwealth* v. *Soares*, 377 Mass. 461, 471, cert. denied, 444 U.S. 881 (1979). "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). "The inferences drawn by the [factfinder] need only be reasonable and possible and need not be necessary or inescapable." *Ibid.*

Here, there was no direct evidence that the defendant and Viera agreed to rob the jewelry store prior to Viera's entering the store. However, a joint venture is unlike a conspiracy, where the agreement that must be shown is a meeting of the minds of the conspirators separate and distinct from and prior to the common intent that is implicit in the commission of the substantive crime. See *Commonwealth* v. *DeCillis*, 41 Mass. App. Ct. 312, 314 (1996). "[J]oint venture liability may arise without prior planning or agreement. It is 'enough that at the climactic moments the parties consciously acted together in carrying out the criminal endeavor, each thereby becoming responsible for the acts of the others. An element of mutual assent at those moments no doubt there is, but there need not have been an anticipatory compact.' *Commonwealth* v. *Branch*, 42 Mass. App. Ct. 181, 184 n.3 (1997), quoting from *Commonwealth* v. *Fidler*, 23 Mass. App. Ct. 506, 513 (1987)." *Commonwealth* v. *Fuentes*, 45 Mass. App. Ct. 934, 935 (1998).

Moreover, the "climactic moments" of a robbery encompass more than the taking of the items. "Escape is an element incident to the crime of robbery." *Commonwealth* v. *Sim,* 39 Mass. App. Ct. at 217. See *Commonwealth* v. *Dellelo,* 349 Mass. 525, 530 (1965). Here, the arguably remote inference of guilt attendant to the defendant's presence behind the wheel of a conveniently positioned vehicle took on an indisputably criminal cast when Viera left the jewelry store openly carrying a bag and trays of jewelry that he did not have upon entry a few minutes earlier, and with the defendant driving away quickly and thereafter seeking to evade pursuing police. The reasonable and possible inferences from such evidence are "of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. at 677, quoting from *Commonwealth* v. *Cooper,* 264 Mass. 368, 373 (1928). From such evidence, a rational trier of fact could reasonably draw the inference that the defendant was aware of and part of an ongoing armed robbery and was attempting to facilitate escape from the scene.

When Viera entered the well-positioned vehicle after the robbery and the defendant sped off, the circumstantial evidence, including the loaded weapon found behind the driver's seat, together with the consciousness of guilt evidenced by the defendant's driving away quickly and trying to elude police, permitted the inference that, as the getaway driver, the defendant was an active participant in that criminal enterprise. See *Commonwealth* v. *Giang,* 402 Mass. at 608-610; *Commonwealth* v. *Kilburn,* 426 Mass. 31, 35-37 (1997); *Commonwealth* v. *Mattos,* 49 Mass. App. Ct. 218, 223-224 (2000); *Commonwealth* v. *Caramanica,* 49 Mass. App. Ct. at 382. In short, the defendant's role as getaway driver is as much one of the "climactic moments" as the taking of the jewelry itself. See *Commonwealth* v. *Fidler,* 23 Mass. App. Ct. at 512-513. Contrast *Commonwealth* v. *Lombard,* 419 Mass. at 591 (insufficient evidence that driver of getaway vehicle acted with knowledge of an attempted robbery and intent to assist the principals).

As the evidence of joint venture was legally sufficient, there is no merit to the defendant's contention that defense counsel's

failure to move for a required finding of not guilty at the close of the Commonwealth's case amounted to ineffective assistance of counsel. Defense counsel did not deprive the defendant of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

3. *Legal standard applied by the judge.* There is also no merit to the defendant's contention that the judge applied an incorrect legal standard in imposing joint venture liability. A defendant is entitled to have the factfinder correctly instructed regarding the elements of the crime. See *Commonwealth* v. *Pickles*, 393 Mass. 775, 779 (1985). A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as factfinder. See *Commonwealth* v. *Beaulieu*, 3 Mass. App. Ct. 786, 787 (1975).

In announcing his verdict, the judge stated that "[t]he question is whether or not [the defendant] knew that an armed robbery had just been committed." The judge's statement is not inconsistent with the applicable legal standard requiring shared knowledge and intent. See *Commonwealth* v. *Sim*, 39 Mass. App. Ct. at 217. Nothing in the judge's comment indicates that the defendant was being found liable as a joint venturer for a crime that had already been completed when the defendant first became involved. See *Commonwealth* v. *Talbot*, 35 Mass. App. Ct. 766, 777 (1994).

Moreover, the judge's remark must be considered in light of all the evidence in the case. The record establishes that in assessing the testimony, the judge was concerned with, among other things, how quickly the defendant drove away when Viera entered the vehicle with the gun and the jewelry. In context, it is apparent that the judge was focused on the defendant's knowledge and intention at the moment Viera entered the vehicle to effect escape. The judge could have credited substantively the defendant's written statement that he saw the gun and jewels when Viera entered the vehicle. The judge was not required to believe the defendant's trial testimony that this damaging admission was attributable to his poor command of English. Neither was the judge required to accept as true any of the other testimony offered in the defendant's case, including Viera's exoneration of the defendant.

4. *Motion to suppress evidence.* The motion judge did not err in refusing to suppress the evidence seized by police during the stop of the Elantra. The motion judge's findings were clear and explicit. On the central point, whether the police had spotted the described getaway vehicle prior to activating lights and sirens, the judge found that at a bend in the road about one-quarter to one-half mile from the robbery scene, the police saw "a small white car travelling three cars ahead of them in traffic." At that point, when they activated their blue lights and sirens, they unquestionably possessed the requisite reasonable suspicion linking the vehicle to the recent armed robbery to effect a stop. See *Commonwealth* v. *Johnson,* 6 Mass. App. Ct. 944, 945-946 (1978); *Commonwealth* v. *Andrews,* 34 Mass. App. Ct. 324, 328 (1993); *Commonwealth* v. *Barbosa,* 49 Mass. App. Ct. 344, 346 (2000). Moreover, as the motion judge correctly noted, the subsequent movement of the vehicle and the conduct of its occupants escalated the reasonable suspicion to probable cause by the time the vehicle stopped suddenly on James Street. See *Commonwealth* v. *Alvarado,* 420 Mass. 542, 550 (1995) (although probable cause had not arisen at the time of the initial stop, subsequent events gave rise to probable cause); *Commonwealth* v. *Va Meng Joe,* 425 Mass. 99, 105-106 (1997); *Commonwealth* v. *Sweezey,* 50 Mass. App. Ct. 48, 52 (2000). Thereafter, the police were justified in drawing guns and removing the defendant from the vehicle. See *Commonwealth* v. *Vazquez,* 426 Mass. 99, 102-103 (1997); *Commonwealth* v. *Torres,* 433 Mass. 669, 676 (2001) (level of police intrusiveness was proportional to danger identified by officer making stop); *Commonwealth* v. *Andrews,* 34 Mass. App. Ct. at 328-329. Upon making the plain-view observation of the jewelry trays in the front seat and the gun on the rear floor, the police possessed probable cause to arrest the defendant for the robbery and to search the entire motor vehicle, as well as its compartments for weapons and evidence. See *Commonwealth* v. *Ciaramitaro,* 51 Mass. App. Ct. 638, 645 (2001).

*Judgment affirmed.*