## COMMONWEALTH vs. ADILSON BARBOSA.

No. 98-P-1708.

Plymouth. January 6, 2000. - June 7, 2000.

Present: PERRETTA, KASS, & LENK, JJ.

*Search and Seizure,* Automobile, Threshold police inquiry. *Constitutional Law,* Search and seizure. *Firearms.*

Police officers, who had received a fairly detailed broadcast description of armed robbery suspects heading their way from an adjacent town, and who noticed two men in a parked car whose clothing matched the description of the robbers' clothing, had sufficient articulable facts to warrant an investigatory stop; handguns found during a precautionary frisk of the occupants and search of the vehicle were properly admissible in evidence. [346]
Evidence at the trial of a complaint for unlawful possession of a gun and ammunition was sufficient to warrant the conclusion that the contraband items were in the defendant's possession or control. [346-347]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on July 10, 1997.

A pretrial motion to suppress evidence was heard by *James W. Dolan,* J., and the case was heard by *James F.X. Dinneen,* J.

*John D. Colucci* for the defendant.

*Bridget Norton Middleton,* Assistant District Attorney, for the Commonwealth.

KASS, J. Primarily, we are concerned with the lawfulness of an investigatory stop and search. The defendant was convicted of unlawful possession of a firearm and ammunition (G. L. c. 269, §§ 10[*a*] and 10[*h*]). We affirm the denial of a pretrial motion to suppress and a motion for required finding of not guilty.

1. *The dispatch.* This was the content of the dispatch broadcast by the police in Stoughton on July 9, 1997. There had been an armed robbery at approximately 4 A.M. of a Christy's convenience store on Route 27 in Stoughton. The suspects were

three Cape Verdean youths, about eighteen years old, one of whom was wearing a green sweatshirt and another a black hooded sweatshirt. One of the robbers had displayed a black handgun. The suspects appeared headed by car for Brockton.

2. *The stop.* Two Brockton police officers, Donahue and Williams, who were traveling in a marked cruiser on Oak Street in Brockton, heard the radio dispatch.[1] About one block from the intersection of Oak Street with Route 27, there was another Christy's store. The officers noticed a car parked to the rear of the store and drove in back of it. With the light from their cruiser's ordinary headlamps, they observed much moving about inside the car, conduct they considered "furtive." They also saw that the rear right door of the car was open and a foot was sticking out that open door as if about to step out. At this point, the police turned on white halogen overhead lamps on their cruiser for better illumination. That light enabled the officers to see that there was a man in the car with a green sweat top and a man with a hooded black sweat top; i.e., clothing that matched what had been described in the radio dispatch.[2] When he noticed the police cruiser, the owner of the extended leg retracted it, slammed the door shut, and the car moved forward twenty to thirty feet before the police turned on their flashing blue lights. When the flashing lights came on, the moving car stopped. The police approached with guns drawn and told the men inside — there were five, including the defendant Barbosa — to put their hands on the automobile ceiling. This was a precautionary measure pending the arrival of assistance for which the officers had called.

Upon the arrival of backup, the officers ordered the men in the car out one by one and frisked them. They found a handgun tucked into the waist band of the front seat passenger. As to the defendant Barbosa, he was frisked by Officer Crowley, a member of the backup team, who "found a handgun, a 9-millimeter."[3] Barbosa was then handcuffed.

---

[1]The dispatch originated from Stoughton police headquarters and was picked up by the Brockton dispatcher, who relayed it to Brockton police officers.

[2]The evidence was conflicting whether the police saw the green and black from ordinary headlight illumination or the overhead halogen lamp illumination. We adopt the finding of the motion judge that the halogen lamp revealed the tell-tale clothing.

[3]During the suppression hearing, the inference was that the nine millimeter

3. *Validity of the stop.* At the suppression hearing and on appeal, Barbosa urges that the police did not have articulable reasons to stop and investigate him and his companions. See *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). Here, the police involvement began with a radio dispatch whose reliability was substantiated by its detail as to the event of the armed robbery in Stoughton, description of the robbers and their clothing, the gun used, and the direction of flight of the robbers. Whoever knew those details had witnessed the crime. *Commonwealth* v. *Alvarado*, 423 Mass. 266, 271 (1996). See *Commonwealth* v. *Medeiros*, 45 Mass. App. Ct. 240, 242 (1998). Contrast *Commonwealth* v. *Cheek*, 413 Mass. 492, 496-497 (1992); *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 526-527 (1995).

A car parked behind another Christy's on the most direct route from Stoughton to Brockton at that pre-sunrise time warranted at least some once-over. When the police officers noticed that the clothing of two of the men answered the description of what two of the robbers had worn, they had articulable facts sufficient to make an investigatory stop. Illuminating the object of their lawful interest did not in and of itself constitute a search. *Commonwealth* v. *Doulette*, 414 Mass. 653, 656-657 (1993). The movement away of the car, while lawful, enhanced suspicion that these might be the robbers. See *Commonwealth* v. *Gunther G.*, 45 Mass. App. Ct. 116, 118-119 (1998). Activating the cruiser's blue flasher was tantamount to a command to stay put, i.e., a seizure. *Commonwealth* v. *Smigliano*, 427 Mass. 490, 492 (1998). As the reported robbery involved a firearm, the police, as a matter of reasonable precaution, were entitled to frisk the occupants of the car. *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968). *Commonwealth* v. *Johnson*, 413 Mass. 598, 600-601 (1992). *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 315 (1992). Contrast the traffic stop line of cases described in *Commonwealth* v. *Torres*, 424 Mass. 153 (1997), and *Commonwealth* v. *Gonsalves*, 429 Mass. 658 (1999). *Commonwealth* v. *Torres*, *post* 348 (2000).

The motion to suppress was correctly denied.

4. *Sufficiency of the evidence that the defendant possessed the gun and ammunition.* We consider the question on the basis of the *Latimore* standard. See *Commonwealth* v. *Latimore*, 378

---

was on Barbosa's person. At trial, it developed that it was found by his foot.

Mass. 671, 677 (1979). Officer Crowley found the gun on the floor where Barbosa had been sitting in the car. Barbosa appeared to Officer Crowley to be kicking something with his feet before he was frisked while sitting in the car. The trial judge could have concluded that Barbosa was trying to distance himself from the nine millimeter gun or, better, make it disappear under a seat. From both Barbosa's proximity to the gun and his effort to conceal it, the judge could infer that Barbosa was exercising dominion and control over the gun. Barbosa, therefore, was not entitled to a required finding of not guilty. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991); *Cramer* v. *Commonwealth*, 419 Mass. 106, 110 (1994); *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567-568 (1980); *Commonwealth* v. *Diaz*, 15 Mass. App. Ct. 469, 471-472 (1983).

*Judgment affirmed.*