## COMMONWEALTH *vs.* ANDREW M. CARAMANICA.

No. 98-P-1741.

Plymouth. February 9, 2000. - June 8, 2000.

Present: BROWN, PORADA, & BECK, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt. *Robbery. Identification. Joint Enterprise. Intent.*

At a criminal trial, the judge's instructions to the jury on reasonable doubt, considered as a whole, were defective [377-379]; and the judge's erroneous instruction that the fact was not in doubt that an armed robbery had occurred was not ameliorated by his curative instruction [379]; further, the judge's instructions on the reliability of identification testimony, joint venture, and intent were flawed [379-382]: a new trial was required.

INDICTMENT found and returned in the Superior Court Department on September 25, 1995.

The case was tried before *Mitchell J. Sikora,* J.

*Julie Ann Boyden* for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of armed robbery while masked, G. L. c. 265, § 17. On appeal, he alleges that (1) the prosecutor's closing was improper, (2) the judge's instructions were seriously flawed, and (3) his attorney provided ineffective representation. We reverse on the basis of the defendant's second claim and so need not address his other arguments.[1]

We briefly rehearse the cardinal points of the evidence: Elizabeth Haas, the victim, was a cashier at a convenience store. One night while she was alone in the store, a car pulled up, and a woman got out and walked inside. The woman wore

---

[1]We would be remiss if we failed to mention that the prosecutor trod dangerously and unnecessarily close to the line in his closing. Compare *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976).

two bandanas to conceal her face and was brandishing a knife. She demanded money from the cash register, but Haas was too flustered to open the cash drawer. The robber then smashed the register on the floor and removed some paper currency.

At about this time, the driver of the car, later identified as the defendant, got out of the vehicle, approached the store, and pounded impatiently on the glass front door. The woman immediately left, got back into the car and, with the defendant behind the wheel, sped off.

A motorist, David Littlefield, who was waiting at a nearby traffic light, witnessed the defendant's getaway. Suspecting that criminal action was afoot, Littlefield gave chase (Littlefield apparently was a member of an organized vigilance group, the "Guardian Angels"). Littlefield followed the defendant's car into the next town, traveling at speeds up to eighty miles per hour. During the chase, Littlefield noticed that the defendant's car had a distinctive rear-mounted gas cap and that the vehicle's license plate had been folded down. Littlefield also got a good look at the defendant.

Eventually, the defendant turned into the parking lot of another convenience store, driving around to the rear so that Littlefield temporarily lost sight of the defendant's vehicle. When the defendant emerged from the back of the store, the license plate on his car had been restored to its proper position. Littlefield noted down the number. After a further brief chase, the defendant managed to give Littlefield the slip. The latter then returned to the site of the robbery, where he spoke with police. Other pertinent facts are included in our analysis as necessary.

The defendant has identified sundry defects in the judge's instruction on reasonable doubt, joint venture, armed robbery, and the reliability of eyewitness testimony. Most, if not all, of the judge's errors were embellishments to or deviations from the pattern instructions available to him. We turn now to the merits of the defendant's claims.

The judge's charge on reasonable doubt was based on the venerable paradigm provided by *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). There were, however, several deviations from the approved instruction, and the question is whether, notwithstanding these emendations, the charge nonetheless

adequately conveyed to the jury the crucial concept of reasonable doubt.[2]

Distilling the defendant's lengthy arguments to their essence, there are three specific allegations of error: use of the phrase "firm and settled belief" as a synonym for reasonable doubt; stating that jurors "should" have "a firm and settled belief" to convict, rather than stating that the jury must have reached that degree of certitude to convict; and generally confusing the concept of reasonable doubt.

A trial judge is not constrained to put the instructions into any particular words; "rather, [the judge] is required only to provide a full and accurate explanation of the governing law applicable to a particular case." *Commonwealth* v. *Berrio*, 43 Mass. App. Ct. 836, 838 (1997). See *Commonwealth* v. *Sherry*, 386 Mass. 682, 696 (1982). Here, we conclude that, in context, the judge's use of the phrase "firm and settled belief" adequately conveyed the high degree of proof required to support a criminal conviction.

A more serious problem is posed by the judge's use of the permissive "should" rather than the mandatory "must" when explaining the necessity of negating reasonable doubt as a prerequisite for conviction. Although limited to a single instance in a lengthy charge, the misstep goes to the heart of the message embodied by *Webster*: where reasonable doubt remains, acquittal is mandatory. See *Commonwealth* v. *Viera*, 42 Mass. App. Ct. 916, 917 (1997). Were this the only flaw in an otherwise wholesome reasonable doubt instruction, reversal might not be required. See *Commonwealth* v. *Redmond*, 357 Mass. 333, 342 (1970) (challenged jury instructions must be viewed as a whole, not piecemeal). It was not, however, the only flaw.

The Supreme Judicial Court concluded in *Commonwealth* v. *Pires*, 389 Mass. 657, 664 (1983), that the concept of reasonable doubt "is sufficiently metaphysical that it may be helpful to a jury to know what does not measure up to the standard." As the use of negative examples, however, may have a tendency to minimize the high burden imposed on the government in

[2]Absent extraordinary circumstances, even experienced judges would be wise to refrain from embellishing the text of an approved instruction, especially "[w]here issues as important as reasonable doubt are concerned." *Commonwealth* v. *Burke*, 44 Mass. App. Ct. 76, 81 (1997). See *Commonwealth* v. *Therrien*, 371 Mass. 203, 209 (1976), and case cited.

criminal trials, trial judges must take particular care not to import illustrative examples which tend to confuse, rather than clarify, the definition of reasonable doubt.[3] Compare *Commonwealth* v. *Wood*, 380 Mass. 545, 548 (1980) (at a minimum, embellished instruction on reasonable doubt "left the jury badly confused"). While, as noted, *Pires* — which we note involved a charge taken *directly* from *Webster* — arguably permits (albeit in dicta) a judge to state what reasonable doubt is not, the confusing, circular locutions used by the judge here did more harm than good. Considering the charge as a whole, we conclude that the reasonable doubt instruction was defective.

Turning to the judge's charge on armed robbery, we likewise conclude that there was error. In his instructions, the judge stated, in essence, that the fact that an armed robbery occurred was not in dispute. That was improper, and upon objection by both the defendant and, commendably, the Commonwealth, the judge reinstructed the jury that they must determine that a robbery had occurred before convicting the defendant. The defendant asserts that this curative instruction was insufficient. We agree.

Ordinarily, a judge must not instruct that necessary elements of the offense charged are to be presumed proved. Contrast *Commonwealth* v. *Villanueva*, 47 Mass. App. Ct. 905, 906 (1999). The judge's remedial measures, while laudable, could not erase from the jury's mind the unmistakable message that the judge believed that the Commonwealth's case — at least as to the issue of the elements of armed robbery — had been proved. This misstep was compounded by the defects in the reasonable doubt instruction that we have already identified.

The judge's instruction on the reliability of identification testimony also was fatally flawed. The judge twice stated that "very few people come into court with an intention to mislead," and stressed that credibility means "accuracy more than honesty." This was an improper incursion into the jury's role as

---

[3] The judge here stated: "proof beyond a reasonable doubt is proof to a high degree . . . . [T]hat high degree is more than simply a greater probability. That is to say, we must say to ourselves, something more than it is more likely true than not . . . . [T]hat degree of proof is more than a greater probability or a strong probability. That is to say, very often we make decisions in which we say something is true as a strong probability. More than just a slight probability, slight or mere probability as to say something is more likely true than not. We come up to a level in which we say something is strongly probable."

sole arbiter of credibility. The judge's misstep probably is attributable to his conflation of the traditional instruction on witness credibility with the instruction — applicable here with especial force — on good faith mistake in identification. See *Commonwealth* v. *Pressley*, 390 Mass. 617, 619-620 (1983); *Commonwealth* v. *Burgos*, 36 Mass. App. Ct. 903, 904 (1994). That we are able to identify the likely source of the judge's error, however, does not change our conclusion. Like the other errors in the judge's instructions,[4] this misstep improperly reduced the government's burden of persuasion.

The judge's charge on joint venture likewise contained defects that served to lessen the government's evidentiary load: he failed to define specific intent; he listed the elements of joint venture disjunctively on one occasion; and he gave somewhat confused instructions on the presence requirement of joint venture. None of these errors was the subject of an objection by defense counsel, depriving the judge of an opportunity to provide curative instructions (as he had done with respect to his charge on identification and armed robbery upon timely objection). Our review, therefore, is limited to determining whether the judge's omissions and errors created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Whitman*, 430 Mass. 746, 750 (2000), and cases cited.

The defendant contends that the judge did not explicitly define the now disfavored term "specific intent." This is a difficult concept. See, e.g., *Commonwealth* v. *Gunter*, 427 Mass. 259, 268-269 (1998). Although the judge adequately differentiated the mental state required for armed robbery from crimes requiring only a general intent, he should have devoted more time to this portion of his charge.

The elements of joint venture are, of course, conjunctive. Although the judge elsewhere stated that the Commonwealth was required to prove "all of the elements" to support a conviction, the erroneous use of "or" between the requirements again

---

[4] In another deviation from the model instruction on eyewitness identification, the judge failed to convey the most important elements of the charge delineated in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 641 (1993). Although the gist of the *Cuffie* instruction — relating to the impact of the passage of time on the reliability of eyewitness identifications — may have been conveyed by other portions of the judge's charge on eyewitness reliability (e.g., the judge mentioned the passage of time between Littlefield's identifications), in view of the importance of this concept here, it was essential that the judge provide an accurate charge.

ran to the troubled question of burden of proof. As already noted, small but significant errors like this reflect the necessity of reading from a model instruction. Viewing the mistake in the context of the judge's other missteps, we conclude that the requisite substantial risk of a miscarriage of justice is present.

The judge apparently became somewhat confused over the presence requirement for proof of criminal liability under a joint venture theory. Admittedly, the case law over the years has muddled the issue. Although something of an oversimplification, presence is *not* required where a defendant actually "aids or abets" in the commission of a crime (as in the case, presented here, of a getaway driver), but presence generally *is* required where a conviction is sought on the basis that a defendant "shared" the principal's criminal intent (i.e., "mental state"), and may have merely stood by, but by agreement was ready to assist if necessary. See in this regard *Commonwealth* v. *Ortiz,* 424 Mass. 853, 856-857 & n.4 (1997), and cases and authorities cited. See generally *Commonwealth* v. *Cook,* 10 Mass. App. Ct. 668, 673-674 (1980). The latter is generally denominated joint venture,[5] while the former typically is discussed under the rubric of accessory liability.[6] In this context, accessory liability is just another way of saying joint venture, and should not be confused with the statutory accessory crimes which are often available to prosecutors, but apparently rarely used as a basis for indictment. See *Commonwealth* v. *Moure,* 428 Mass. 313, 316-318 (1998), discussing G. L. c. 274, §§ 2, 3. Parenthetically, we also note that "conspiracy" differs from the forms of common law joint venture discussed *supra,* in that it requires affirmative proof of a prior agreement, separate and distinct from the shared intent that may be reflected in the actions of joint venturers at the time the substantive offense is committed. See *Commonwealth* v. *DeCillis,* 41 Mass. App. Ct. 312, 314 (1996). Since direct proof of such prior agreement often is lacking, and possibly due to the historical difficulty in obtaining a conspiracy conviction (requisites for conviction previously included proof of overt act and prior conviction of principal), prosecutors generally rely on common-law joint venture.

Here, whether the defendant was present during the crime

[5]See, e.g., *Commonwealth* v. *Semedo,* 422 Mass. 716, 719 (1996). See also *Commonwealth* v. *Bianco,* 388 Mass. 358, 366 (1983).

[6]See, e.g., *Commonwealth* v. *Raposo,* 413 Mass. 182, 184-185 (1992). See also *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 241-242 (1982).

was a close question. He was at all times very nearby — probably within sight — and "in a position to render aid." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). However, there is no question that, as the getaway driver, he was an active participant in the criminal enterprise. In these circumstances, the judge did not need to charge on presence. See, e.g., *Commonwealth* v. *Mahoney*, 405 Mass. 326, 329 (1989) ("in the vicinity of the crime"). See also *Commonwealth* v. *Kilburn*, 426 Mass. 31, 34 n.5 (1997). In some sense, therefore, the defendant received a more generous charge than he deserved. However, a confusing charge, even if overgenerous, may be prejudicial. In view of the other errors, the judge's remarks on presence likely further misled a jury already bedeviled by other errors and ambiguities in the instructions.

A trial judge has "discretion . . . to choose the form of expression best adapted to make the law intelligible to the jurors." *Commonwealth* v. *Silva*, 388 Mass. 495, 507 (1983). However, as the court observed some years ago, "freehand embellishments of the standard charge . . . [too often] only create uncertainty and breed needless appeals." *Commonwealth* v. *Therrien*, 371 Mass. 203, 208 (1976). This, unfortunately, is such a case. We are therefore obliged to reverse the defendant's judgment of conviction and set aside the verdict.

*So ordered.*