COMMONWEALTH vs. JOSEPH E. MOREAU.

No. 01-P-1524.

Worcester. October 21, 2002. - January 29, 2003.

Present: Brown, Greenberg, & Mason, JJ.

*Search and Seizure,* Automobile, Threshold police inquiry. *Constitutional Law,* Search and seizure.

At a hearing on a pretrial motion to suppress evidence obtained during a traffic stop, brought by a criminal defendant charged with operating a motor vehicle while under the influence of intoxicating liquor, the judge erred in terminating the hearing before the Commonwealth had completed its case and in granting the defendant's motion to suppress on the ground that the information relayed to the police by a radio broadcast lacked the requisite indicia of reliability to justify the stop, where a witness, who was present and available to testify regarding her firsthand observations of the events (i.e., the defendant's behavior and erratic driving) that precipitated her call to the police and resulted in the dispatch, could have established the reliability of the radio transmission. [251-254]

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on June 1, 2000.

A pretrial motion to suppress evidence was heard by *Elliott L. Zide,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Francis X. Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Timothy J. Smyth,* Assistant District Attorney, for the Commonwealth.

*Ann E. Johnston* for the defendant.

GREENBERG, J. Auburn police Officer Eric Snay received a dispatch from headquarters that "an individual . . . had fallen on the steps in front of the Auburn Package Store . . . and that the person got in a vehicle and drove away and that [he was]

operating erratically." A precise description of the vehicle and the license plate number were included in the radio transmission. The source of the information was the clerk of the package store, later identified as Joanne LaRochelle, who witnessed the events and called the police right after the vehicle drove away. Based upon that information, the police quickly determined that the car was registered to an owner residing at 127C Auburn Street. Snay drove a short distance to that address and spotted the same vehicle parked in the driveway with the brake lights illuminated, the front facing toward the house. He parked his police cruiser behind the car and approached the vehicle on foot. The defendant was seated behind the steering wheel. At that moment, the defendant opened the driver's door, and Snay observed that he had a cut on his hand and that there was blood on his trousers and on the inside of the door panel. The defendant admitted that he was injured due to a fall. As a result, Snay called for an ambulance. While awaiting the ambulance, Snay spoke to the defendant and observed "that his eyes were very watery and bloodshot."

Based upon these uncontested facts, a criminal complaint issued from District Court charging the defendant with a second offense of operating a motor vehicle while under the influence of intoxicating liquor. The defendant moved to suppress Snay's observations and any statements that the defendant made to Snay during the entire encounter. The defendant argued that the stop, detention, and search were not justified upon either reasonable suspicion or probable cause. The defendant's motion succeeded, and the Commonwealth brought an interlocutory appeal pursuant to Mass.R.Crim.P. 15, as appearing in 422 Mass. 1501 (1996).

Before Snay had finished his testimony at the motion hearing, the judge terminated the hearing. It is apparent from the judge's findings that he viewed Snay's actions as a pursuit under *Commonwealth* v. *Stoute*, 422 Mass. 782 (1996), and a stop "in the *Terry* sense." See *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). Concentrating on the *Terry* aspect of the case, the judge found that the information related to Snay by the police dispatcher lacked the requisite indicia of reliability and that, therefore, everything that followed could not be justified as a *Terry*-type stop.

Had the judge not terminated the hearing when he did, his skepticism about the stop and subsequent encounter might have lost its edge. When an officer's conduct is based on a police radio broadcast, the additional layer of hearsay does affect the reliability determination. The cases on this point speak in terms of the need for eliciting the basis of the call. See *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-495 (1992); *Commonwealth* v. *White*, 422 Mass. 487, 495-498 (1996); *Commonwealth* v. *Medeiros*, 45 Mass. App. Ct. 240, 242 (1998). Here, however, it is apparent from the record that LaRochelle, who was present in the courtroom in order to testify, would have provided firsthand observations of the event that precipitated her call to the police dispatcher. See *Commonwealth* v. *Alvarado*, 423 Mass. 266, 271 (1996); *Commonwealth* v. *Barbosa*, 49 Mass. App. Ct. 344, 346 (2000).

The judge, in his findings, questioned whether the telephone call from the package store "actually came from an identified clerk other than [the woman] Snay testified to at the hearing." The dichotomy the judge constructs is too rigid. As the Supreme Court has many times held, there are situations in which anonymous tips, suitably corroborated, exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Alabama* v. *White*, 496 U.S. 325, 327 (1990). For example, police observation may corroborate specific, nonobvious facts, showing the tipster is familiar with the suspect's behavior. See *Commonwealth* v. *Alvarado*, 423 Mass. at 271; *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 104-105 (1997).

It is also apparent from the judge's analysis that he overlooked the principle of proportionality. Once the investigative circumstances for a stop are established, the pertinent inquiry is whether "the degree of intrusion is reasonable in the circumstances." *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990). What "is permitted is that which is 'proportional to the degree of suspicion that prompted the intrusion.' " *Ibid.*, quoting from *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). As Snay approached the defendant's vehicle, which had been described by the caller, the defendant opened the door. Keeping in mind that this was a dynamic, not static, endeavor and that

Snay did not order the defendant to exit the vehicle, the defendant's actions led "to heightened suspicion (justifying further inquiry)." *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 642 (2001). See *Commonwealth* v. *Torres*, 433 Mass. 669, 674 (2001).

The correctness of the ruling on the motion to suppress aside, the larger problem here is that the judge halted Snay's testimony before the Commonwealth completed its case. So far as appears, LaRochelle was the store clerk who initiated the call, and since she was available as a witness, she could easily have connected the dots because she was more than a "faceless informer." *Commonwealth* v. *Atchue*, 393 Mass. 343, 347 (1984). The judge could have relaxed the strict requirements of the *Aguilar-Spinelli*[1] test, which he found were not met at the time he granted the suppression motion. See *Commonwealth* v. *Atchue*, 393 Mass. at 347; *Commonwealth* v. *Burt*, 393 Mass. 703, 710 (1985); *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 232 (2002).

We have observed that a judge may curtail direct or cross-examination if the questions are not relevant or if the relevance is greatly attenuated. See *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981); *Commonwealth* v. *Johnson*, 16 Mass. App. Ct. 935, 936-937 (1983). Appellate courts grant great deference to the trial judge's resolution of questions of relevance unless there has been "palpable error." *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981). Should the line of questions do nothing more than permit the examiner to elicit speculative facts or prolong the interrogation by covering the same ground, then the judge may cut off the questioning. See *Commonwealth* v. *Chretien*, 383 Mass. 123, 138 (1981).

Here, we conclude that the motion judge wrongly terminated the hearing. In effect, he ruled on the basis of what he had heard from Snay, without giving the prosecutor an opportunity to conduct a redirect examination. LaRochelle could have established the reliability of the radio transmission because she was an identified caller. See *Commonwealth* v. *Va Meng Joe*, 425 Mass. at 102-105; *Commonwealth* v. *Love*, 56 Mass. App.

[1]See *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969).

Ct. at 232. See also Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 4-3(c), at 4-26 (2001).

The order allowing the motion to suppress is reversed, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*