IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 29832-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION PUBLISHED |
| DARRELL F. SMITH, | ) | IN PART |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Darrell Smith was convicted of multiple crimes arising out of his alleged 12-hour unlawful imprisonment of Eric Chadwick. He was also convicted for possession of methamphetamine found in a search following his arrest. While he makes numerous assignments of error, we find one dispositive: the atypical wording of the elements instructions given at trial could have allowed jurors to convict him even if they entertained reasonable doubt as to his guilt.

We reject Smith's single evidence sufficiency challenge (to his conviction for possession of methamphetamine), reverse his convictions on the basis of the instructional error, and remand for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

Darrell Smith was convicted of first degree robbery, unlawful imprisonment, second degree assault, misdemeanor harassment, and second degree theft. All arose from a scheme that Smith hatched with a drifter, Desert Sand Donini, who was then living at the same motel in Moses Lake as was Smith. Donini had become acquainted with Eric Chadwick, who was in Moses Lake to work a temporary construction job and had helped her out when she ran out of money in late February 2010. Smith and Donini realized that Chadwick, who had a good job and was then working 60 hours a week, probably had a fair amount of money.

The many twists and turns of what became Smith's and Donini's alleged 12-hour imprisonment of Chadwick need not be recounted, given the basis for our decision. It suffices to say that Smith demanded that Chadwick withdraw funds from Chadwick's bank accounts, buy assets that Smith could traffic, and—when Chadwick's credit/debit card was eventually frozen—forced him to drive Smith to locations where Smith could steal merchandise and then sell it. Eventually, Chadwick claims to have seen his opportunity to escape and did, promptly calling police.

Smith and Donini were found and arrested. Smith agreed to speak with Moses Lake police officers and his statement to police was recorded. A search warrant was obtained for his motel room, resulting in discovery of a CD (compact disc) with white residue on its surface that tested positive for methamphetamine.

2

Donini agreed to testify for the State at trial, where she supported Chadwick's version of his imprisonment. Smith's defense at trial was that Chadwick had been a willing participant in the 12-hour crime spree and called police only when he became concerned about being charged.

At trial, the court-prepared jury instructions differed in several respects from the Washington pattern jury instructions. The court's introduction to instructions given at the conclusion of trial omitted some of the cautions and directions included in 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02 (3d ed. 2008) (WPIC) (Conclusion of Trial—Introductory Instruction).

The elements instructions were generally based on WPIC 4.21 (Elements of the Crime) but had been modified with respect to directions given the jury depending on how it weighed the evidence. After stating the elements of a given crime, WPIC 4.21 provides:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then *it will be your duty to* return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt . . . , then *it will be your duty to* return a verdict of not guilty.

(Emphasis added.)

The court's elements instructions to the jury generally read, instead:

3

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then *you should* return a verdict of guilty . . . .
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt . . . , then *you should* return a verdict of not guilty.

Clerk's Papers (CP) at 60 (Instruction 12, second degree assault); 62 (Instruction 14, possession of a controlled substance); 66 (Instruction 18, second degree theft); 71 (Instruction 23, unlawful imprisonment); 74 (Instruction 26, misdemeanor harassment); 52-53 (Instruction 5, robbery[1]). Smith did not object to any of these instructions.

The jury began its deliberations late in the afternoon. At around 11 a.m. the next morning, the jury asked to watch Smith's recorded statement again. The trial judge initially declined the request. After further deliberations, the jury sent out the following statement:

> We have come to a stand-still and don't believe we can get any closer to a unanimous decision without seeing the parts of the interview video between Officer Loyd and Darrell Smith that we viewed during trial.

CP at 80. The judge then allowed the video to be replayed for the jury in open court, over Smith's objection. In replaying the video, portions that had not earlier been admitted into evidence were inadvertently presented. The jury thereafter reached its verdict.

---

[1] Instruction 5, dealing with robbery, was worded slightly different but still directed the jury that "if, after weighing the evidence, you have a reasonable doubt . . . , then you should return a verdict of not guilty."

Smith was convicted of first degree robbery, unlawful imprisonment, second degree assault, possession of methamphetamine, misdemeanor harassment, and second degree theft. A motion for a new trial on the burglary charge was granted but the court denied a motion for a new trial based on the inadvertent airing of video footage that had not been admitted in evidence, the court finding no prejudice.

Smith was sentenced to 17 years in prison. He appeals.

## ANALYSIS

## I

The trial court's introductory instruction to the jury at the conclusion of the evidence did not include 12 cautions or directions usually included; among those omitted were that the jurors accept the law "regardless of what [they] personally believe the law is," and "apply the law from [the court's] instructions to the facts that [they] decide have been proved, and in this way decide the case." WPIC 1.02, *compare with* CP at 47-49. More significantly, the elements instructions directed the jurors that "if, after weighing all the evidence, you have a reasonable doubt . . . , then *you should* return a verdict of not guilty." Smith argues that modifications to the pattern instructions created a "free for all," including leaving the jury with no constitutional guidance.

Generally, a party who fails to object to jury instructions in the trial court waives a claim of error on appeal. RAP 2.5(a); *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010). Our general refusal to entertain issues that were not raised in the trial court

5

has a specific applicability to most jury instructions in criminal cases in light of

CrR 6.15(c), requiring that timely and well stated objections be made to instructions

given or refused "'in order that the trial court may have the opportunity to correct any

error.'" *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988) (quoting *City of

Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)). Manifest errors

affecting a constitutional right may be raised for the first time on appeal, however. *Id.* at

685.

Smith argues that the trial court's instructions relieved the State of its burden of

proving all of the required elements beyond a reasonable doubt, thereby violating due

process and constituting manifest constitutional error. We agree that his challenge to the

elements instructions presents an issue of manifest error affecting a constitutional right.

*See State v. Dow*, 162 Wn. App. 324, 330, 253 P.3d 476 (2011) (citing *State v. O'Hara*,

167 Wn.2d 91, 100-01, 217 P.3d 756 (2009)); *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d

415 (2005) (observing that the elements instruction "carries with it a special weight

because the jury treats the instruction as a 'yardstick' by which to measure a defendant's

guilt or innocence").

With respect to the claimed omissions from the trial court's introduction to its

concluding instructions, though, we disagree. The requirements of due process usually

are met when the jury is informed of all the elements of an offense and instructed that

unless each element is established beyond a reasonable doubt the defendant must be

6

acquitted. *Scott*, 110 Wn.2d at 690. The directions and cautions included in WPIC 1.02

can prove important on appeal if a defendant contends that jurors reached their verdict for

an improper reason; in such cases, appellate courts regularly rely on a trial court's

introductory instructions and the presumption that juries follow those instructions. *See,*

*e.g.*, *Diaz v. State*, 175 Wn.2d 457, 474, 285 P.3d 873 (2012). Smith has not

demonstrated that the trial court's omissions of some of the cautions and directions

included in WPIC 1.02 amounted to constitutional error, however, let alone manifest

constitutional error.

We therefore review only the elements instructions. Review is de novo, in the

context of the instructions as a whole. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628,

635, 244 P.3d 924 (2010).

The specific language of the instructions is left to the discretion of the trial court.

*State v. Coe*, 101 Wn.2d 772, 787, 684 P.2d 668 (1984). The instructions as a whole

must, however, correctly state the law. *Boeing Co. v. Key*, 101 Wn. App. 629, 633, 5

P.3d 16 (2000). While pattern jury instructions are intended to be accurate, concise,

unbiased statements of the law, they are not the law and are not mandatory. *In re Pers.*

*Restraint of Domingo*, 155 Wn.2d 356, 369, 119 P.3d 816 (2005).

"What the factfinder must determine to return a verdict of *guilty* is prescribed by

the Due Process Clause." *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124

L. Ed. 2d 182 (1993) (emphasis added). The prosecution bears the burden of proving all

elements of the offense charged and must persuade the fact finder beyond a reasonable doubt of the facts necessary to establish each of those elements. *Id.* at 277-78 (citing, *e.g., In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). The beyond-a-reasonable-doubt requirement applies in state as well as federal proceedings. *Id.* at 278.

A corollary of the due process requirement that a jury find proof beyond a reasonable doubt in order to return a verdict of guilty is that it must return a verdict of not guilty if the State does not carry its burden. Jury instructions must convey this. It is reversible error to instruct the jury in a manner relieving the State of its burden. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

Smith argues that the substitution of the word "should" reduced the State's burden by connoting what is proper rather than what is required. By directing the jury that it "should" return a verdict of not guilty if the State failed to meet its burden of proof, Smith argues that the jury was left with the impression that it ought to acquit if possessed of reasonable doubt but that it was not mandatory. No Washington decisions address the substitution of "should" for "duty" in an elements instruction, but Smith cites the observation of a Massachusetts appellate court that the "use of the permissive 'should' rather than the mandatory 'must'" is a serious misstep that "goes to the heart of the [matter]: where reasonable doubt remains, acquittal is mandatory." *Commonwealth v. Caramanica*, 49 Mass. App. Ct. 376, 729 N.E.2d 656, 659 (2000). Even so, the

Massachusetts court held that "[w]ere this the only flaw . . . , reversal might not be required." *Id.*

*Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004) supports Smith's position more strongly. In that case, the Ninth Circuit reviewed a district court's grant of habeas relief based, among other claimed error, on the court's instruction 10, which explained that before the jury could convict, it "'*should* require the Prosecution to prove every material allegation contained in the Information beyond a reasonable doubt.'" *Id.* at 821 n.5 (emphasis added). While the Ninth Circuit reversed the district court's grant of habeas relief, it explained that any error in instruction 10 was immediately cured by a following statement that if "'you entertain a reasonable doubt of the truth of any one of these material allegations, then it is *your duty* to give the Defendant the benefit of such doubt and acquit him,'" and by summing up with the unequivocal statement: "'There *must* be proof beyond a reasonable doubt.'" *Id.* at 822. In a footnote, the court explained why use of the term "should" may have misstated the jury's obligation, which was

> by no means clear, as common definitions of "should," "shall" and "must" include both an obligatory and an exhortatory connotation. *See, e.g., Webster's Third New International Dictionary* (unabridged 1986).

*Id.* at 822 n.6; *see also Caudill v. Judicial Ethics Comm.*, 986 S.W.2d 435, 438 (Ky. 1998) (concluding, in a different context, that "[s]hould, while definitely strongly encouraging a particular course of action, is permissive. Shall requires a particular course of action and accordingly, is mandatory"); *Louisiana Seafood Mgmt. Council v.*

9

*Louisiana Wildlife & Fisheries Comm'n*, 97-1367 (La. 5/19/98); 715 So. 2d 387, 394

("The modern rule rejects [the] 'arcane' meaning [of 'should' as 'was obliged to'] and

instead defines 'should' as 'the weaker companion to the obligatory "ought."'" (quoting

WEBSTER'S NEW COLLEGIATE DICTIONARY 1065 (1979); *State v. Thomas*, 528 So. 2d

1274, 1275 (Fla. Dist. Ct. App. (1988))). *Louisiana Seafood* also relies on Bryan

Garner's *A Dictionary of Modern Legal Usage*, the most recent edition of which includes

the following entry addressing "ought" and "should":

> *Ought* should be reserved for expressions of necessity, duty, or obligation;
> *should*, the slightly weaker word, expresses mere appropriateness,
> suitability, or fittingness.

DICTIONARY OF LEGAL USAGE 644 (3d ed. 2011); *but cf. Torrence v. State*, 574 So. 2d

1188, 1189 (Fla. Dist. Ct. App. 1991) (upholding the use of "should" in instructing a jury

whether to acquit).

We suspect that in this case the jury more likely than not understood the court's

use of "should" in the elements instruction as mandatory. But we cannot be sure that it

did. One of our panel queried the lawyers during oral argument with "you *should* eat

your vegetables but you don't *have to* eat your vegetables," and "you *should* get more

exercise doesn't mean you *shall* get more exercise." Even the State did not disagree.

Erroneously instructing the jury that it may acquit if in reasonable doubt is

structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149, 126 S. Ct. 2557,

165 L. Ed. 2d 409 (2006) (denial of the right to trial by jury by giving of a defective

reasonable doubt instruction is structural error, citing *Sullivan*). Structural error is not subject to harmless error analysis; prejudice is necessarily presumed. *State v. Strode*, 167 Wn.2d 222, 231, 217 P.3d 310 (2009). "'[T]he difficulty of assessing the effect of the error'" is one criterion for identifying harmless error. *State v. Wise*, 176 Wn.2d 1, 14 n.7, 288 P.3d 1113 (2012) (quoting *Gonzalez-Lopez*, 548 U.S. at 149 n.4). It is illustrated here. At one point, this jury was deadlocked. We do not know why and we do not know how the deadlock was resolved. Perhaps jurors concluded from the court's instructions that while jurors with lingering doubts *should* return a verdict of not guilty, they did not have to.

"The jury instructions, read as a whole, 'must make the relevant legal standard manifestly apparent to the average juror.'" *State v. Kyllo*, 166 Wn.2d 856, 864, 215 P.3d 177 (2009) (quoting *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997)). The elements instructions did not do so here.

We reverse Smith's convictions and remand for a new trial.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

## II

All but one of Smith's remaining assignments of error are to trial events that are unlikely to recur. He does make one sufficiency of error challenge that requires review.

11

He argues that possession of methamphetamine residue in only trace amounts is insufficient to support a possession conviction. He urges us to construe Washington's Uniform Controlled Substances Act, chapter 69.50 RCW, to require possession of some minimum amount of a controlled substance, beyond residue or a trace amount, to support conviction.

We review questions of statutory interpretation de novo. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). Our goal in interpreting a statute is to ascertain the legislature's intent. *Id.* When a statute's meaning is plain on its face, we must give effect to that meaning as expressing the legislature's intent. *Id.* The statute's plain meaning is determined from the ordinary meaning of its language, the statute's general context related provisions, and its statutory scheme as a whole. *Id.* When a statute is unambiguous, words or clauses that the legislature has chosen not to include may not be added. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

The act provides:

> It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.

RCW 69.50.4013(1). "Controlled substance" is defined to mean "a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state

12

laws, or federal or board rules." RCW 69.50.101(d). Nowhere does the act identify a minimum quantity required to support conviction.

The plain language of the act, then, does not support the requirement that an offender possess any minimum amount of a controlled substance. *See State v. Alexander*, 125 Wn.2d 717, 726, 888 P.2d 1169 (1995) (concluding that the legislature did not establish a minimum amount for which a defendant could be prosecuted in determining whether an "extraordinarily small amount" could be the basis of an exceptional reduced sentence). Smith nonetheless urges us to recognize a quantity requirement as a common law element of the offense, lest Washington be the only state in the union that criminalizes possession of a trace amount of a controlled substance without at the same time requiring knowledge as an element of the crime. Our Supreme Court has already held that knowledge is not an element of the crime of possession. *State v. Bradshaw*, 152 Wn.2d 528, 530-40, 98 P.3d 1190 (2004).

As Smith acknowledges, Division One of our court rejected the construction of the act that he asks us to adopt in *State v. Malone*, 72 Wn. App. 429, 438, 864 P.2d 990 (1994). And this division held in *State v. Rowell*, 138 Wn. App. 780, 785, 158 P.3d 1248 (2007) that an offender's lack of knowledge that she or he possesses a controlled substance is properly considered in connection with the affirmative defense of unwitting possession. While Smith suggests that neither *Malone* nor *Rowell* engaged in a full analysis, we are satisfied that they do. The act does not require that a minimum amount

13

be possessed in order to sustain a conviction. *Malone*, 72 Wn. App. at 439. As to

knowledge or lack thereof,

> once the State proves the elements of unlawful possession of a controlled
> substance, the burden then falls on the defendant to prove the affirmative
> defense of unwitting possession. *Bradshaw*, 152 Wn.2d at 538; *State v.*
> *Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994). The affirmative defense
> of unwitting possession "does not improperly shift the burden of proof."
> *Bradshaw*, 152 Wn.2d at 538. Instead, it is a "'judicially created
> affirmative defense that may excuse the defendant's behavior,
> notwithstanding the defendant's violation of the letter of the statute.'"
> *State v. Buford*, 93 Wn. App. 149, 151-52, 967 P.2d 548 (1998) (quoting
> *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931 (1998)); *Staley*, 123
> Wn.2d at 799.

*Rowell*, 138 Wn. App. at 785-86. Possession of an "extraordinarily small amount" is also

a substantial and compelling reason for downward departure from the standard sentence

range. *Alexander*, 125 Wn.2d at 727.

STATEMENT OF ADDITIONAL GROUNDS

In his pro se statement of additional grounds (SAG), Mr. Smith raises three issues,

two of which relate to the airing of the video. Given our remand for a new trial, there is

no need to address that event.

The third issue is his claim that the trial court erred in failing to make written

findings supporting its decision to admit the statements made by Mr. Smith to Officer

Loyd.

When a defendant's statement is to be offered in evidence, the court is required to

set a hearing for the purpose of determining whether the statement is admissible.

14

CrR 3.5(a). Although a CrR 3.5 hearing is mandatory, under proper circumstances a defendant can waive a voluntariness hearing and the formal entry of written findings. *State v. Nogueira*, 32 Wn. App. 954, 957, 650 P.2d 1145 (1982).

Here, Mr. Smith and the State signed a "Stipulation for the Admission of Defendant's Statements Pursuant to CrR 3.5." SAG app. C. The stipulation provides "that all statements made by the defendant to investigating officers during the pendency of the investigation with regards to this case were made with the defendant's knowledge of his constitutional rights pursuant to Miranda[2] and with the defendant waiving his/her rights; and that the statements were freely and voluntarily given." *Id.*

The written findings required by CrR 3.5(c) are of the evidence presented and conclusions reached at a CrR 3.5 hearing. Where the hearing is waived there is no record to be made. The trial court did not err.

We reverse Smith's convictions and remand for a new trial.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Sweeney, J.

_____
Brown, J.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).